459 So.2d 836 (1984)
The HOME INDEMNITY COMPANY, a Corp., et al.
v.
Pauline A. ANDERS, et al.
Pauline A. ANDERS, et al.
v.
CITY OF MOBILE, a Municipal Corp., et al.
The INSURANCE COMPANY OF NORTH AMERICA, as Subrogee of Springdale Stores
v.
CITY OF MOBILE, a Municipal Corp., et al.
BROWN & BROWN OF DELAWARE, INC., et al.
v.
CITY OF MOBILE, a Municipal Corp., et al.
PLEASANT VALLEY ASSEMBLY OF GOD
v.
CITY OF MOBILE, a Municipal Corp., et al.
Frances N. ALDRIDGE, Individually, and Frances N. Aldridge, et al., as Executors of the Estate of Henri M. Aldridge, Deceased
v.
CITY OF MOBILE, a Municipal Corp., et al.
82-902, 82-1162, 82-1195, 82-1196, 82-1204, and 82-1205.
Supreme Court of Alabama.
September 14, 1984.
Rehearing Denied November 9, 1984.
*838 William H. Brigham, Mobile, for City of Mobile.
G.B. McAtee, of Stokes & McAtee, Mobile, for Mr. and Mrs. Jeffery Watt, Mr. & Mrs. Ron Barrett, Mr. & Mrs. Danny Whitehead, and Mr. & Mrs. Robert Turberville.
Fred W. Killion, Jr. and Robert E. Clute, Jr., of Reams, Vollmer, Philips, Killion, Brooks & Schell P.C. Mobile, for Andrew and Lila Giardina.
Fred W. Killion, Jr. and Lucian Gillis, of Reams, Vollmer, Philips, Killion, Brooks & Schell, P.C., Mobile, for Big Three Motors, Inc.
Robert A. Beckerle, Mobile, for George Hayward Walker and George Ann Walker.
Vaughan Drinkard, Jr., of Drinkard & Sherling, Mobile, for William J. and Joan Glisson.
John W. Parker, Mobile, for Cleve and Laura Jackson, et al.
Irvin Grodsky, of Grodsky & Mitchell, Mobile, for Emory K. Johnson, Bernice Johnson and Willie Mae Parker.
Eugene De Martenson and Rebecca L. Shows of Huie, Fernambucq & Stewart, Birmingham, for The Home Indemnity Company, et al.
Robert H. Smith, of Collins, Galloway & Smith, Mobile, for The Ins. Co. of North America, etc.
Russell S. Terry, Mobile, for Brown and Brown of Delaware, Inc., et al.
Thomas S. Rue and W. Alexander, of Johnstone, Adams, May, Howard & Hill, Mobile, for Pleasant Valley Assembly of God.
Joel F. Danley and Ralph G. Holberg III, of Holberg, Tully, Holberg & Danley, Mobile, for Frances N. Aldridge, et al.
*839 John W. Parker, of McFadden, Riley & Parker, Mobile, for Jeremiah Lowney, Joe and Yanira Logan, Cleve and Laura Jackson.
Joe H. Little, Jr. and Mary Beth Mantiply, of Gaillard, Little, Hume & Sullivan, Mobile, for amicus curiae The Board of Water and Sewer Commissioners of the City of Mobile.
Rehearing Denied in 82-902 November 9, 1984.
TORBERT, Chief Justice.
In 1980 and 1981, several large storms passed over the City of Mobile (City). Widespread flooding caused extensive property damage. Hundreds of lawsuits were filed against the City. Most of the suits alleged that the City had been negligent in the design, construction, and maintenance of its sewer and drainage system. The City was insured by the Home Indemnity Company (Home). Disputes arose between the flood victims and the City and between the City and Home as to the extent of the City's potential liability to the flood victims and the extent of Home's coverage of the City under the insurance policy.
The City filed a declaratory judgment action on February 1, 1982, seeking in part a determination of what an "occurrence" was, both under the statute at issue, 1977 Ala.Acts, No. 673 (codified at Code 1975, § 11-93-1 through § 11-93-3) and under the facts in this case. Several defendants in the suit counterclaimed, contending § 11-93-2 was not applicable, or that if it was applicable it was unconstitutional, and that it did not contain an aggregate limitation on the recovery of property damage.
Defendants filed a motion for summary judgment on the counterclaim. On January 21, 1983, the trial court entered an order holding that § 11-93-2 was applicable, was constitutional, and contained an aggregate limitation on property damage of $100,000 for all judgments arising out of an "occurrence." This order was made final pursuant to A.R.Civ.P. 54(b) on July 15, 1983.
The "occurrence" issue was tried in March of 1983, and an order, made final pursuant to A.R.Civ.P. 54(b), was entered on May 6, 1983. The court concluded in effect that each property owner who obtained a judgment against the City was injured as the result of a separate "occurrence."
Home appeals from the order of May 6, 1983, and several flood victims cross appeal from the order of January 21, 1983, made final on July 15, 1983. The appeals of the various parties have been consolidated. We will address the issues raised on the cross appeals first, since they concern some threshold questions needing resolution before we address the "occurrence" issue.

Applicability
The flood victims contend that § 11-93-2 does not apply to this case. Their complaints seek recovery against the City on the grounds that there was a defect in a public improvement. They correctly argue that this is the second of two grounds under Code 1975, § 11-47-190, for suing a municipality in tort, the first ground being that the City has vicarious liability for the neglect, carelessness, or unskillfulness of some agent, officer, or employee. See, e.g., Bailey v. City of Mobile, 292 Ala. 436, 296 So.2d 149 (1974); Hillis v. City of Huntsville, 274 Ala. 663, 151 So.2d 240 (1963). They argue that for the purposes of § 11-93-2 the definition of "claim" contained in § 11-93-1(5)[1] only describes claims arising under the vicarious liability provision of § 11-47-190.
The first part of § 11-47-190 makes a municipality responsible for the negligent *840 acts of certain classes of people who act for the municipality. The second part of § 11-47-190 codified common law decisions that a municipality was liable for damages caused by defects in public improvements, City of Prichard v. Kelley, 386 So.2d 403 (Ala.1980), even though the defect was not created by the negligence of the municipality's employee. City of Tallassee v. Harris, 431 So.2d 1177 (Ala.1983). However, the municipality is responsible only if it has actual or constructive notice of the defect and fails to remedy it. Code 1975, § 11-47-190; City of Scottsboro v. Johnson, 436 So.2d 859 (Ala.1983).
A corporation can act only through its servants, agents, or employees. Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323 (1953). While § 11-47-190 refers to notifying "the council or other governing body," it is that body's culpable omission in failing to correct the defect once actual or constructive notice is given that creates liability in the municipality for damages that result. The definition of "employee" for purposes of § 11-93-2 includes officers, officials, employees, or servants. Code 1975, § 11-93-1(2). Therefore, the definition of "claim" in § 11-93-1(5) encompasses a situation, like that alleged in this case, where an official's omission causes damages.

Constitutionality
The flood victims also contend that Act 673 is unconstitutional. The right to maintain a tort action against a local governmental entity has undergone a gradual expansion. Act 673 was passed in response to the gradual abolition of immunity. Roberts v. Meeks, 397 So.2d 111 (Ala.1981) (Maddox, J., concurring specially).
The abolition of immunity was not the result of this Court's totally abolishing the immunity recognized at common law, but instead reflected this Court's attempt to give effect to the Legislature's intent, as set forth in several statutes, to waive immunity in certain circumstances. Parton v. City of Huntsville, 362 So.2d 898 (Ala. 1978); Enterprise City Bd. of Education v. Miller, 348 So.2d 782 (Ala.1977). This Court has acknowledged that the Legislature has authority to provide any limitations or protections it deems necessary in this field, Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), unless prohibited by the Constitution. Enterprise City Bd. of Education v. Miller, 348 So.2d 782 (Ala.1977).
In determining whether the act is constitutional, we are bound by the following presumption:
"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."
Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944).
With this background in mind, we find no constitutional impediment to the Legislature's limiting the liability of local governmental entities. We note initially that while numerous grounds are advanced on appeal for finding the Act unconstitutional, our search of the record reveals that the only grounds raised both at trial and on appeal were the assertions that the Act violates the remedy provisions of Article I, § 13, and denies equal protection as guaranteed in Article I, § 1. This Court will not consider constitutional questions not raised below. Smith v. State, 280 Ala. 241, 192 So.2d 443 (1966).
The flood victims argue that § 11-93-2 is offensive because it limits tort liability of local governmental entities without doing the same for natural persons. The standard to be applied in determining whether § 11-93-2 will withstand an equal protection challenge is set forth in Reese v. Rankin *841 Fite Memorial Hospital, 403 So.2d 158, 161 (Ala.1981), as follows:
"[T]he court need only find that the classification made by the legislature is not arbitrary or unreasonable. As this court recently held in Tyson v. Johns-Manville Sales Corporation, 399 So.2d 263 (Ala. 1981):
`A statutory discrimination between classes is held to be relevant to a permissible legislative purpose if any state of facts reasonably may be conceived to justify it.'"
The City and Home contend that the statute was designed to protect the financial solvency of local governmental entities, while at the same time affording an injured party the possibility of recovering a substantial sum. A similar rationale was advanced in the case of Stanhope v. Brown County, 90 Wis.2d 823, 280 N.W.2d 711 (1979), where the Wisconsin Supreme Court considered an equal protection challenge to a statutorily imposed limitation on tort recoveries from municipalities. We quote with approval that court's conclusion:
"We are unwilling to say that the legislature has no rational basis to fear that full monetary responsibility entails the risk of insolvency or intolerable tax burdens. Funds must be available in the public treasury to pay for essential governmental services; taxes must be kept at reasonable levels; it is for the legislature to choose how limited public funds will be spent. It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefits the citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit."
Id. 90 Wis.2d at 842, 280 N.W.2d at 719.
Article One, § 13, of the Alabama Constitution of 1901 provides:
"That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
The extent of the protection afforded by Section 13 has yet to be totally defined. Comment, Section 13: Constitutional Armor for the Common Law, 35 Ala.L.Rev. 127 (1984). Under the current analysis, the "common-law rights" approach, a two-tiered standard has been developed.[2]Lankford v. Sullivan, Long & Hagerty, 416 So.2d 996 (Ala.1982). The standard to be applied depends upon the source of the right being affected. In this case the right to sue a municipality is a right created by statute. An attempt to alter or modify that right will run afoul of Section 13 only if the legislation is arbitrary or capricious. Id. at 1000. As our discussion of the equal protection challenge illustrates, the legislation is neither arbitrary nor capricious.

Aggregate Limitation
Next, the flood victims contend that § 11-93-2 does not contain an aggregate limitation on the recovery of property damages when multiple judgments are returned as the result of a single occurrence. A close examination of § 11-93-2 compels us to agree.[3] The first sentence of § 11-93-2 *842 sets the recovery limit for bodily injury or death for one person in any judgment arising from a single occurrence. The second sentence sets the recovery limit for bodily injury or death for more than two persons under any judgment or judgments arising out of a single occurrence. The third sentence sets the recovery limit for property damage under any judgment arising out of a single occurrence.
The first and third sentences are identical except for the fact that the first applies to bodily injury or death and the third applies to property damage. Conspicuous by its absence is a forth sentence similar to the second sentence which would limit recoveries for property damage under any judgment or judgments arising out of a single occurrence.
If the Legislature had intended to create an aggregate limitation on recovery of property damages it could easily have done so. "The maxim of expressio unius est exclusio alterius, when coupled with the ease of inclusion if such had been intended," requires that we find no aggregate limitation exists. Adams v. Mathis, 350 So.2d 381, 386 (Ala.1977).
We reject the City's and Home's argument that to give effect to the legislative intent as expressed in the preamble"[t]o prescribe and establish monetary limits ... on tort liability"we should read "any judgment" in the third sentence of § 11-93-2 to mean "all judgments." We note first that even without an aggregate limitation on property damages, the act does provide monetary limits on tort liability for property damage under any judgment. They argue that without a cap on the total liability for property damage under multiple judgments the intent of the legislature is unfulfilled. Such an argument is unsound. The preamble to Act 673 does not purport to establish the maximum liability of local governmental entities under all circumstances.
The cases cited by the City and Home, Centennial Associates v. Clark, 384 So.2d 616 (Ala.1980), and Fuller v. Associates Commercial Corp., 389 So.2d 506 (Ala. 1980), in support of their argument that "any" should be interpreted as "all" do not support their argument in this case. In Fuller we said, "[W]here statutory language is plain and unambiguous the statute should be given the meaning therein plainly expressed." Id. at 508. See also, State v. Dawson, 264 Ala. 647, 89 So.2d 103 (1956) (when the language is plain and unambiguous and the meaning obvious, there is no room for construction). We find no ambiguity which requires us to construe the statute.

Standing
The flood victims allege that Home does not have standing to appeal the issue of the interpretation of the term "occurrence" as used in § 11-93-2 and applied to the facts of this case. Generally an appeal can be brought only by a party or his personal representative, City of Mobile v. Gulf Development Co., 277 Ala. 431, 171 So.2d 247 (1965), from an adverse ruling, McCulloch v. Roberts, 290 Ala. 303, 276 So.2d 425 (1973), contained in a final judgment Kelley v. U.S.A. Oil Corp., 363 So.2d 758 (Ala.1978).
The major contention raised is that while Home was a party to the entire declaratory judgment action, it was not technically a party to the counts of the City's complaint which sought a determination of the "occurrence" issue. It should be kept in mind, however, that the main thrust of the City's complaint was a determination of the insurance coverage provided by Home to the City. The City maintained that it had negotiated with Home for insurance that was co-extensive with the liability ceilings provided *843 for in § 11-93-2. One of the critical issues in that dispute centered on the meaning of the word "occurrence" as used in § 11-93-2 and in the insurance contract.
Home certainly had a right to argue what it thought an "occurrence" was in § 11-93-2 when it wrote a policy intended to cover the City for its liability under the statute. Therefore, under the facts of this case, we find that Home was a party entitled to appeal the adverse ruling on the "occurrence" issue.

Occurrence
Having concluded that Home has standing, we address its contention that the trial court erroneously construed the term "occurrence" as used in § 11-93-2 and as applied to the facts of this case.
We recently had occasion to define the phrase "one occurrence." United States Fire Insurance Co. v. Safeco Insurance Co., 444 So.2d 844 (Ala.1983). We concluded that "as long as the injuries stem from one proximate cause there is a single occurrence." Id. at 846 (quoting Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3rd Cir.1982)). While in Safeco we were attempting to give effect to the intention of the parties to the insurance contract and here we are trying to give effect to the intention of the Legislature, we find that difference to be of no consequence, since in both situations the drafting parties were attempting to accomplish the same objective. They sought to limit liability by limiting recoveries for injuries that result from a common source.
The act clearly is concerned with limiting tort liability, see § 11-93-3; therefore, it seems reasonable to use the tort law concept of proximate cause to establish what was the "occurrence" or alleged breach of duty that gave rise to the injuries. The "but for" test advanced by Home is at most a rule of exclusion and can provide no clue of any kind to singling out the source of injury from a legal standpoint. Cf. W. Prosser, Law of Torts, p. 238 § 41 (1971). We also reject the use of an "effect" or "impact" test advocated by some property owners. That test would say that every time someone or something is injured, there is an "occurrence." It fails to focus on the source and instead looks at who or what was injured or damaged.
To reiterate, we hold that for the purposes of § 11-93-2, all injuries that stem from one proximate cause are the result of a single "occurrence." The trial court held, in effect, that each flood victim was injured as the result of a separate occurrence, without specifying what theory or ground it used to reach that conclusion. In order to reach that conclusion using the "proximate cause" test that we now hold applies, the trial court would have had to find that the damage was the result of a negligent act of the City. Only a fraction of the flood victims testified at the trial of the "occurrence" issue, and their testimony focused mainly on whether the rainfalls or the allegedly negligent acts of the City were the occurrence. The testimony did not center on which negligent acts resulted in which injuries.
Our holding that the proximate cause test should determine what was a single occurrence compels us to find that this declaratory judgment action was not the proper forum to make the factual determination of what the occurrences were in this case. The flood victims named parties to this action had either lawsuits or claims pending against the City before this action was commenced. The resolution of the pending claims and lawsuits against the City by the individual flood victims will necessarily require a determination of whether the injuries suffered by the flood victims were proximately caused by the allegedly negligent acts of the City. The trial court should have declined to make the factual determination as to what the proximate cause of the flood victims' injuries was, since it lacked jurisdiction because the same issue involving the same parties was pending in other proceedings at the time the declaratory judgment action was filed. Trimble v. City of Prichard, 438 So.2d 745 (Ala.1983); Smith v. North *844 River Ins. Co., 360 So.2d 313 (Ala.1978). To the extent it made that factual determination, the judgment is void. Trimble, 438 So.2d at 746.
In conclusion, we affirm the trial court's holding that § 11-93-2 is constitutional and applicable to this case; we reverse the determination that § 11-93-2 contains an aggregate limitation on the recovery of damages for injury to property; we hold that in determining what an "occurrence" is for the purposes of § 11-93-2, all injuries that stem from a single proximate cause are the result of a single "occurrence"; and we hold that the trial court should have declined to make the factual determination of what constituted the occurrence or occurrences in this case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially).
I concur with the opinion in every aspect except for the standard of review applicable to a constitutional challenge of a statute as that standard is quoted from Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944). A standard that casts upon the challenger the burden of overcoming a presumption of a statute's constitutional validity, and imposes upon a reviewing court a duty to sustain the legislative act, unless it clearly violates fundamental law beyond a reasonable doubt, reverses the order of priority as between the organic law expressed in the constitution and the legislature's exercise of its plenary powers. It is one thing for the challenger to have the burden of persuasion; it is yet another thing altogether to have the burden of overcoming a presumption of validity. The legislative act, once assailed, either comports with the guidelines of fundamental law and is valid, or it violates constitutional provisions and is void.
To be sure, the exercise of judicial power, in its review of legislative enactments, is not without admonitions of restraint. This delicate power must be used with a sensitive recognition that the legislature's plenary power is absolute; that it is derived from neither federal nor state Constitutions; and that such power, apart from constitutional limitations, has no bounds. Courts must exercise great caution not to decide the constitutional issue in favor of invalidity because they think the challenged act is unwise or bad policy, or that it violates the court's notions of citizens' natural, social, or political rights not guaranteed by the Constitution. Appellate courts will address only those constitutional issues raised below and then only when necessary for an appropriate decision. If the act is equally susceptible to two interpretations, the one that comports with constitutional validity is favored over the one that does not. Likewise, if any portion of the act is constitutional, and that portion, when standing alone, can be given a reasonable field of operation, only the invalid portion will be stricken.
Most, if not all, of these admonitions of restraint are aptly set out in McAdory, but none of these rises to the level of a presumption of validity of a challenged act. What, then, is the origin of such a statement? I think the answer is quite simple. Without attempting a detailed review of the evolution of this principle through our case law development, it is interesting to note that this presumption of validity rule finds its expression in the earlier cases only in the context of unchallenged acts, or where the challenge was asserted by one not directly affected by the act's operation. A typical statement of the rule, as originally espoused, is found in Jones v. Black, 48 Ala. 540 (1872):
"Nor will a court listen to an objection made to the constitutionality of an act of the Legislature by a party whose rights it does not specially affect. An act of the Legislature will be assumed to be valid until some one complains whose rights it invades, and it is only when *845 some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void as to him, his property, or his rights, that the objection of unconstitutionality can be presented and sustained." Cited with approval in Shehane v. Bailey, 110 Ala. 308, 20 So. 859 (1895), and State v. Montgomery, 177 Ala. 212 at 221, 59 So. 294 at 296 (1912), which was cited with approval by Justice Beatty, speaking for the Court, in Lowe v. Fulford, 442 So.2d 29 (Ala.1983).
Somewhere between Montgomery and McAdory, our Court dropped a qualifying phrase from a very solid rule: Until assailed by a party whose rights are specially affected, a legislative act is presumed valid. Thus, by so altering the expression of the rule, a fundamental concept was perverted.
NOTES
[1] Code 1975, § 11-93-1(5), provides:

"`Claim' means any claim against a governmental entity, for money damages only, which any person is legally entitled to recover as damages caused by bodily injury or property damage caused by a negligent or wrongful act or omission committed by any employee of the governmental entity while acting within the scope of his employment, under circumstances where the governmental entity, if a private person, would be liable to the claimant for such damages under the laws of the State of Alabama."
[2] While I have not concurred in, and continue to disagree with, this analysis in considering Section 13 challenges, Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334 (Ala. 1980) (Beatty, J., dissenting), I see no reason to argue the point in this case. The statute survives scrutiny under either the "common-law rights" approach or the "vested rights" approach as originally articulated in Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939), which I would employ.
[3] Code 1975, § 11-93-2, provides:

"The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth."