Steve Wilson Hilliard sued the City of Huntsville ("the city"), alleging that the city had negligently inspected the wiring in an apartment complex occupied by Hilliard and his family and that an electrical fire at that apartment complex had claimed the *Page 890 
lives of his wife and his two children just over a month after the city's inspection.
In addition to the city, Hilliard named as defendants in the suit the owner of the apartment complex, Philip Kromis; the electrical contractor that installed the wiring, Landman Electric Company, Inc.; and the Utilities Board of the City of Huntsville ("Huntsville Utilities"). Hilliard effected a settlement with Kromis and Landman Electric, and they were dismissed as defendants, leaving the city and Huntsville Utilities as the remaining defendants.
Hilliard's complaint, as finally amended, included two causes of action against the city: (1) negligence and/or wantonness and (2) nuisance. In response to Hilliard's complaint, the city filed a motion to dismiss or, in the alternative, for judgment on the pleadings, and a motion for summary judgment. After oral argument on the motions, the trial court entered a judgment on the pleadings in favor of the city as to both of Hilliard's causes of action.[1] Hilliard appealed.
The issue raised in this appeal is whether the trial court erred in entering a judgment on the pleadings on Hilliard's negligence and/or wantonness claim and on the nuisance claim.
With regard to the negligence and/or wantonness claim, we recognize that before liability for negligence can be imposed upon a governmental entity, there must first be a breach of a legal duty owed by that entity. Shearer v. Town of Gulf Shores,454 So.2d 978 (Ala. 1984). In determining whether a claim is valid, the initial focus is upon the nature of the duty. Richv. City of Mobile, 410 So.2d 385 (Ala. 1985). There must be either an underlying common law duty or a statutory duty of care with respect to the alleged tortious conduct.
For a number of years in Alabama, municipal liability was predicated upon the negligent performance of a proprietary, as opposed to a governmental, function. See, e.g., Hillis v. Cityof Huntsville, 274 Ala. 663, 151 So.2d 240 (1963); City of BayMinette v. Quinley, 263 Ala. 188, 82 So.2d 192 (1955). Where the function in question was conferred not for the immediate benefit of the municipality, but rather " 'as a means to the exercise of the sovereign power for the benefit of all citizens,' " no liability would extend to a municipal corporation for a failure to use its power well or for an injury caused by using it badly. Hillis, 274 Ala. at 667,151 So.2d 240, quoting City of Bay Minette v. Quinley, 263 Ala. 188, 82 So.2d 192 (1955).
However, in 1975, this Court abolished the doctrine of municipal immunity in Jackson v. City of Florence, 320 So.2d 68
(Ala. 1975). The abolition of sovereign immunity in Jackson did not create any new causes of action for activities that are inherently governmental in nature, but rather gave full effect to a municipal liability statute enacted by the legislature many years earlier. See § 1207, Ala. Code 1907. That statute, presently codified at § 11-47-190, Ala. Code 1975, provides, in part:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty. . . ."
The Court's ruling in Jackson eliminated the distinction between governmental and proprietary functions, making municipalities liable for negligent performance of a number of activities for which they had previously been immune, thus allowing "the will of the legislature, so long ignored, [to] prevail." 320 So.2d at 74. The Jackson Court expressed the hope that the legislature would provide, through legislation, additional limitations and protections for governmental bodies.
However, instead of the legislature, it was this Court that next addressed the *Page 891 
extent of a municipality's liability for damage resulting from its agent's negligent inspection or negligent failure to inspect; that was in Rich v. City of Mobile, supra. The allegations by the plaintiffs in Rich are virtually identical to the allegations by Hilliard in the present case. The Rich
complaint alleged that city plumbing inspectors had failed to require the installation of proper materials; had failed to assure that no leaks existed; and had failed to require that the plumbing be installed according to the standard plumbing code. The plaintiffs alleged that the city had made three negligent preliminary inspections and had wholly failed to make a final inspection of the lines and connections. The plaintiffs attempted to characterize those actions as the breach of a duty to the individual homeowners, to which liability attaches.
The Rich Court initially noted that cases from other jurisdictions considering the duty owed by municipal inspectors had resulted in two distinct lines of reasoning. The Court cited Coffey v. City of Milwaukee, 74 Wis.2d 526,247 N.W.2d 132 (1976), Adams v. State, 555 P.2d 235 (Alaska 1976), andCampbell v. City of Bellevue, 85 Wn.2d 1, 530 P.2d 234
(1975), as cases in which municipalities had been held liable for negligently inspecting a building. Other jurisdictions had rejected municipal liability for negligent inspections. The Court cited Hoffert v. Owatonna Inn Towne Motel, Inc.,293 Minn. 220, 199 N.W.2d 158 (1972), Besserman v. Town of ParadiseValley, Inc., 116 Ariz. 471, 569 P.2d 1369 (Ariz.App. 1977), and Georges v. Tudor, 16 Wn. App. 407, 556 P.2d 564 (1976), for this latter proposition.
In reaching its holding in Rich, the Court followed the latter line of above-noted cases and refused to hold that the duty imposed upon city plumbing inspectors was owed to individual homeowners. Consequently, the breach of such a duty, the Court held, would not support an action for damages. The Court ruled that substantive immunity applies to those public service activities of municipalities "so laden with the public interest as to outweigh the incidental duty to individual citizens." Rich, 410 So.2d at 387-88. The Court further opined that public policy considerations
 "prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services."
Id. at 387.
In the present case, Hilliard argues that the trial court erred in relying upon Rich because, he argues, that case was limited to facts identical to the facts of that case. Hilliard contends that the facts in this case do not fall within the ambit of the Rich holding. We disagree.
The present case is precisely the type of case in which the substantive immunity rule applies. The city, like most municipalities, elects to perform electrical inspections as a benefit to itself and to the general public. While individuals receive a benefit from these inspections, that benefit is merely incidental to the benefit derived by the citizens in general. Although an individual driver benefits by the state's testing and licensing of drivers of motor vehicles, the state in so testing and licensing drivers does not guarantee to individual drivers that all licensed drivers are safe drivers.See Cracraft v. City of St. Louis Park, 279 N.W.2d 801 (Minn. 1975).
In arguing that Rich is inapplicable to the present case, Hilliard attempts to draw a distinction between sewer inspections and electrical inspections, arguing that the sewer inspection in Rich involved a duty owed to the public at large and that the inspection in the present case, because it was of the electrical system in one apartment building, was a duty owed to the individual apartment residents. However, this is a distinction without a difference. We find no merit in this argument. The purpose behind both inspections is the same: to ensure compliance with municipal codes.
Hilliard cites several cases that he says indicate the reluctance of Alabama courts to apply the Rich holding. SeeTown of *Page 892 Leighton v. Johnson, 540 So.2d 71 (Ala.Civ.App. 1989); Cityof Mobile v. Jackson, 474 So.2d 644 (Ala. 1985); Williams v.City of Tuscumbia, 426 So.2d 824 (Ala. 1983). However, each of these cases involved facts materially different from those ofRich and those of the present case. For instance, Hilliard cites Town of Leighton v. Johnson, supra, as showing the limits of Rich. However, in Johnson, the city created the defect that caused the injury by knocking a hole in a manhole cover and thereby allowing raw, untreated sewage to flow into a drainage ditch near the plaintiff's property. Alabama municipalities have long been held liable for damages caused by negligent operation and maintenance of sewers and drains under their control. See Sisco v. City of Huntsville,220 Ala. 59, 124 So. 95 (Ala. 1929). Thus, in Johnson, the Court of Civil Appeals merely refused to hold that the substantive immunity rule changed the tort laws governing municipal operations.
Clearly, the same policy considerations that prevailed inRich are equally compelling in this case. Although inspections performed by the city's electrical inspectors are designed to protect the public by making sure that municipal standards are met, and although they are essential to the well-being of the governed, the electrical code, fire code, building code, and other ordinances and regulations to which Hilliard refers are not meant to be an insurance policy or a guarantee that each building in the city is in compliance. While Hilliard calls to our attention the inherent danger of electricity, it is precisely because of the dangerous nature of that element that immunity should be granted to a municipality that, although not required by law to do so, chooses to provide for the public health, safety, and general welfare of its citizenry through the regulation of this inherently dangerous element.
The fact that the law does not mandate that a municipality provide inspections in order to protect the lives and property of its residents tends to increase the probability that the imposition of tort liability in this area would serve only to destroy the municipality's motivation or financial ability to support this important service. For these reasons, the same public policy considerations that led to the substantive immunity rule of Rich necessitate its extension to the facts of this case. Therefore, while we sympathize with Hilliard's tragic loss, we are compelled to conclude that the trial court did not err in entering a judgment on the pleadings on Hilliard's claim of "neglectful, careless, unskillful, negligent or wanton" inspection of the wiring at the apartment complex where he and his family resided.
With regard to Hilliard's allegation of wantonness, we conclude that the motion for a judgment on the pleadings was due to be granted on grounds unrelated to substantive immunity. Section 11-47-190 limits the liability of municipalities to injuries suffered through "neglect, carelessness or unskillfulness." Neighbors v. City of Birmingham, 384 So.2d 113
(Ala. 1980). To construe this statute to include an action for wanton conduct would expand the language of the statute beyond its plain meaning. For this reason, Hilliard's claim of wantonness was properly dismissed.
Hilliard's nuisance claim is based upon the same allegations contained in the negligence count of his complaint. Section6-5-120, Ala. Code 1975, broadly defines a "nuisance" as "anything that works hurt, inconvenience or damage to another," and provides that "[t]he fact that the act done may otherwise be lawful does not keep it from being a nuisance." As a general rule, liability for damages caused by a nuisance does not depend upon proof of negligence and may exist even though there has been no negligence. Terrell v. Alabama Water Service,245 Ala. 68, 15 So.2d 727 (1943). However, an actionable nuisance claim against a municipality is dependent upon the plaintiff's ability to maintain a claim under § 11-47-190.
In City of Bessemer v. Chambers, 242 Ala. 666, 8 So.2d 163
(1942), this Court considered whether, in addition to an action alleging liability arising under what is now § 11-47-190, an independent nuisance action could be maintained against a municipality. *Page 893 
The Court answered in the negative, stating that "the limitation of liability in that statute necessarily means to exclude liability on any other count." Chambers,242 Ala. at 669, 8 So.2d at 165. Therefore, it follows that the viability of a negligence action against a municipality under § 11-47-190
determines the success or failure of a nuisance action based upon the same facts. Thus, we conclude that because the city is entitled to the benefit of the substantive immunity doctrine enunciated in Rich with regard to Hilliard's negligence claims asserted under § 11-47-190, his action for nuisance must also fail.
In view of the foregoing, we hold that the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] The court made that judgment final pursuant to Rule 54(b), A.R.Civ.P. Huntsville Utilities remains a defendant at the trial court level.