PER CURIAM.
The defendants appeal from a declaratory judgment and a permanent injunction entered against them by the Circuit Court of Jefferson County. The defendants claim to be the duly elected members of the board of directors of Cumberland Lake Country Club, Inc., for 1993 and the election committee for the board of directors of Cumberland Lake Country Club, Inc. (“the Evans Board”).[1] The judgment was entered in favor of Cumberland Lake Country Club, Inc., and a group of persons claiming to be the members of the board of directors of Cumberland Lake Country Club, Inc. (“the Estes Board”).[2] The circuit court found that the Estes Board was the duly elected board of directors and enjoined the defendants from holding themselves out as being members of the board of directors and from conducting any business on behalf of Cumberland Lake Country Club, Inc.
Cumberland Lake Country Club, Inc. (“Lake”) was incorporated as a nonprofit membership corporation in 1966 for the purpose of operating a golf and country club. The by-laws established a 15-member board of directors with terms staggered so that five directorships would expire each year. The by-laws call for the members of Lake to vote for the five new directors at the annual meet *12 ing held at the club on the first Sunday of December.
In 1982 Lake sold all of its real and personal property to Cumberland Golf and Country Club, Inc. (“Golf’). Under the sales contract and an addendum to the contract, Golf was to manage and operate the club facilities for the exclusive benefit of the members of Lake.[3] Lake continued to elect a board of directors annually.
In November 1991, as a result of Golfs proposal to turn the golf course into a semi-public course, Lake and Terry Estes, as president of Lake, filed against Golf an action for a judgment declaring the rights of the parties under the sales contract of 1982. That case was assigned to Judge Marvin Cherner of the Tenth Judicial Circuit; it is styled Joseph Terry Estes, et al. v. Cumberland Golf and Country Club, Inc., CV-91-9481.
In December 1991 the board of directors of Lake imposed an assessment of $100 on the members of Lake to pay legal expenses incurred by Lake in its litigation with Golf. Seventy members paid this assessment and were declared by the board to be members in good standing. On October 26, 1992, the board solicited from these 70 members approval of its recommendation to suspend the annual meeting and election of the board of directors to be held in December 1992. A majority of the 70 members voted to suspend the meeting and election.
After the suspension of the election, a group of persons claiming to be members of Lake purported to elect five persons to the Lake board of directors (“New Board # 1”). This act prompted Lake and the Estes Board, which was the board as it existed before any 1992 elections, to file a petition with Judge Cherner for a temporary restraining order to enjoin New Board # 1 from holding itself out as the board of Lake or conducting any business on behalf of Lake. Judge Cherner granted the restraining order. Three persons who were enjoined by that restraining order are also named defendants in this case.[4]
On August 25, 1993, Golf filed a Chapter 11 bankruptcy petition. Lake filed an adversary proceeding in the bankruptcy court to determine the ownership of Golf,[5] and New Board # 1 intervened in the proceedings. The action that was pending before Judge Cherner was removed to the bankruptcy court. The bankruptcy court issued an order remanding the state claims to the circuit court, but that order was appealed to United States district court. The bankruptcy court issued a stay of the remand order pending the appeal. When this appeal was submitted to this Court, that appeal was still pending in the United States district court.
Subsequent to Golfs filing in the bankruptcy court, the Estes Board suspended the board of directors elections for 1993, after learning that a group of persons claiming to be members of Lake had formed an “Election Committee” to hold their own board of directors elections. Even though the elections were suspended by the Estes Board, the group submitted ballots to the general membership and held an election in which five new directors purportedly were elected. The directors purported to be elected in spite of the suspension of elections in 1992 and 1993 constitute the Evans Board. The Evans Board began to hold itself out as the board of directors of Lake and attempted to conduct business on behalf of Lake. The Estes Board and Lake then filed this present action for a judgment 1) declaring that the Estes Board is the duly authorized board with the legal and equitable right to conduct *13 the business of Lake and 2) enjoining the Evans Board from holding itself out as the duly authorized board of Lake. The Evans Board members filed a counterclaim asking for similar relief in their favor.
Judge Cherner entered a preliminary injunction on November 4, 1994, enjoining the Evans Board from holding itself out as the duly authorized board of Lake. He set the case to be heard on the merits on January 9, 1995. The Evans Board appealed the preliminary injunction, but this Court dismissed the appeal as moot because of the later permanent injunction entered by Judge Cherner. Evans v. Cumberland Lake Country Club, Inc., 663 So.2d 927 (Ala.1995).
On January 5, the bankruptcy court conducted a hearing on whether to stay the proceeding Judge Cherner had scheduled for January 9. That court entered the following order:
“This matter came on to be heard on the Application for Temporary Restraining Order filed by the Debtor-In-Possession [Golf] (hereinafter ‘DIP’) on January 5, 1995. The Application for Temporary Restraining Order was filed with a Verified Complaint for Declaratory Judgment and Sanctions, Damages and Attorneys’ Fees by the DIP, with the DIP as Plaintiff therein, the same having been filed on January 5, 1995. This matter was heard at 2:00 p.m. on January 5,1995-
“The Court has reviewed the Application for Temporary Restraining Order and the Verified Complaint for Declaratory Judgment and Sanctions, Damages and Attorneys’ Fees. At the January 5 hearing, the Court heard extensive presentations and arguments from counsel present.
“The Court finds that there is a hearing presently scheduled before the Honorable Marvin Cherner, Judge of the Circuit Court of Jefferson County, 10th Judicial Circuit, on Monday, January 9, 1995. Mr. Leitman furnished a copy of the Petition for Declaratory Judgment seeking a determination as to the duly authorized and elected Board of Directors of Cumberland Lake Country Club Inc. that he filed in order to initiate the lawsuit set for hearing before Judge Cherner, and that lawsuit appears to involve issues that may affect matters pending before this Bankruptcy Court. Mr. Toffel clearly stated his concern on behalf of the DIP that the main assets of the DIP, the operating business, the members of its business, their executo-ry contracts with the DIP to pay dues and other monies, and the accounts receivable for these dues and other monies themselves, would be severely depleted or eroded if certain events transpired after Judge Cherner made his Orders after the hearings were concluded in his Court.
“The Court further finds that 11 U.S.C. Section 362(a)(3) operated as a stay, applicable to all entities, of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. This Court will not allow the above-stated assets of the DIP to be depleted or otherwise taken from the estate or adversely affected by third parties. Immediate and irreparable injury, loss or damage will result to the DIP if the provisions of 11 U.S.C. Section 362(a)(3) are violated. The Court, because of the emergency nature of the request made by the DIP, finds the Application to be well taken in order to preserve the assets of this estate.
“IT IS THEREFORE ORDERED as follows:
“1. The Application for Temporary Restraining Order filed by the DIP on January 5, 1995 is hereby GRANTED to the following extent:
“A. This Court is not stopping or staying the hearing scheduled on January 9,1995 before the Honorable Marvin Cherner;
“B. This Court is enjoining Cumberland Lake Country Club, Inc., [and the members of the Estes Board] from taking any actions to adversely affect the assets of the DIP, until a further Order by this Court on those issues is made; and
“C. Any determination by any other Court that may be related to the issues set forth in paragraph B above [is] not binding on this Court.
[[Image here]]
*14 “DONE and ORDERED on this the 9th day of January, 1995.”
Judge Cherner heard the case as scheduled and held that the Estes Board was the duly authorized board with the right to conduct the business of Lake. Judge Cherner also enjoined the Evans Board members from holding themselves out as members of the board of directors for Lake. His order read:
“This matter was submitted on the Plaintiffs’ Application for Permanent Injunction, Petition for Declaratory Judgment and Defendants’ Counterclaim. After a full, hearing on the evidence which occurred on January 9, 10, and 11, 1995, the Court makes the following findings of fact and conclusions of Law:
“1. The individual Plaintiffs were the duly authorized and elected Board of Directors of Cumberland Lake Country Club, Inc. (‘Lake’) in 1992.
“2. In November, 1992, a majority of the members of Lake voted to suspend the 1992 election of directors.
“3. After the members of Lake by majority vote suspended the election of directors in 1992, an intervenor group elected a ‘new’ Board of Directors of Lake in December, 1992. It was the position of the intervenor group that the members of Lake could not lawfully suspend the election of directors.
“4. This Court then entered an Order on March 1, 1993, enjoining the intervenor group from holding themselves out to be members of the lawful Board of Directors of Lake or from conducting business on behalf of Lake in the case styled as Joseph Terry Estes, et al. v. Cumberland Golf & Country Club, et al, Civil Action Number CV-91-9481-MC;
“5. In November, 1993, a majority of the members of Lake ... voted to suspend the 1993 election of directors.
“6. After the members of Lake by majority vote suspended the election of directors in 1993, the Defendants in this case then held a meeting and took the same position as the intervenor group had taken in the earlier case, namely, that the members of Lake could not suspend the 1993 election of directors. Defendants then elected a rival slate of directors some of whom were not members of Lake and had been involved in the previous attempt to elect a ‘new1 Board of Directors in 1992.
“7. On May 5, 1994, Plaintiffs filed this action seeking a declaratory judgment that they are the duly authorized and elected Board of Directors of Lake and an Injunction against Defendants’ holding themselves out to be members of the Board of Directors of Lake and from conducting any business and affairs on behalf of Lake;
“8. When Defendants again attempted to elect directors of Lake in 1994, this Court entered a Preliminary Injunction on November 4, 1994, enjoining Defendants from conducting any further elections, taking any actions that would affect Lake or entering into any agreements with Cumberland Golf & Country Club, Inc. (‘Golf) which could affect the rights and liabilities of Lake pending a final hearing on the merits.
“9. Thereafter, a majority of the members of Lake voted to suspend the 1994 election of directors.
“10. Defendants violated the November 4,1994, Preliminary Injunction by continuing to hold themselves out as the Board of Directors of Lake.
“11. This Court previously had before it the issues of whether Golf could maintain a separate membership from the membership of Lake and whether such persons claiming to be members of Golf had a right to access to the premises located at 2150 Cumberland Lake Drive in Pin-son, Alabama. Because these issues were a part of the proceedings removed from this Court, this Court specifically makes no finding with regard to these issues.
“Therefore, it is the judgment of this Court that:
“1. The members of Lake had the authority and power to and did suspend the election of directors in 1992,1993 and 1994. Cunningham v. Etowah Quality of Life Council, 484 So.2d 1075 (Ala.1986); Elgin v. Alabama Farm Bureau Federation, 431 So.2d 1151 (Ala.1983);
*15 “2. The individual Plaintiffs are the duly authorized and elected Board of Directors of Lake.
“3. The individual Plaintiffs have all legal and equitable right to control the business and affairs of Lake by their actions as the only lawful Board of Directors of Lake.
“4. The Defendants ... are hereby permanently enjoined from holding themselves out as members of the Board of Directors of Cumberland Lake Country Club, Inc., a non-profit corporation, and are enjoined, along with their agents, employees, servants, representatives, or any other person acting in concert or partic- ■ ipation with them, from conducting any business on behalf of Cumberland Lake Country Club, Inc., a non-profit corporation, including conducting any further meetings or elections in [an] effort to replace or displace the Plaintiffs as the Board of Directors of Cumberland Lake Country Club, Inc.
“5. The Defendants ... are hereby enjoined from taking any action of any nature which will or could affect the rights or liabilities of Cumberland Lake Country Club, Inc., a non-profit corporation.
“6. The Defendants ... are hereby permanently enjoined from entering into any agreements with Cumberland Golf & Country Club, Inc. which could affect the rights or liabilities of Cumberland Lake Country Club, Inc., a non-profit corporation.”
The first issue is whether this complaint for declaratory judgment should have been dismissed because of the pendency of the prior action. The Evans Board is relying upon the rule that a declaratory judgment will not be entertained when another action is pending involving the same parties and the same issues.
This Court has consistently held that a declaratory judgment action will not be entertained if there is pending a prior action to which the same persons are parties and in which the same issues may be adjudicated. Foreman v. Smith, 272 Ala. 624, 133 So.2d 497 (1961). In Home Indemnity Co. v. Anders, 459 So.2d 836 (Ala.1984), this Court reaffirmed the rule of Foreman v. Smith In Home Indemnity Co., this Court reversed a declaratory judgment in which the circuit court had made factual determinations that were also at issue in several prior pending negligence actions involving the same parties. 459 So.2d at 843. This Court held:
“The trial court should have declined to make the factual determination as to what the proximate cause of the flood victims’ injuries was, since it lacked jurisdiction because the same issue involving the same parties was pending in other proceedings at the time the declaratory judgment action was filed. Trimble v. City of Prichard, 438 So.2d 745 (Ala.1983); Smith v. North River Ins. Co., 360 So.2d 313 (Ala.1978). To the extent it made that factual determination, the judgment is void.”
Home Indemnity Co., 459 So.2d at 843-44; see also Mathis v. Auto-Owners Ins. Co., 387 So.2d 166 (Ala.1980); Ex parte Moore, 382 So.2d 548 (Ala.1980): and George Moulton, Inc. v. Langan, 285 Ala. 427, 233 So.2d 74 (1970).
If a court is allowed to entertain a declaratory judgment action, then its judgment might be inconsistent with an order entered in the prior pending action dealing with the same issue.
The Estes Board filed a declaratory judgment action against Golf in 1991 to determine the parties’ rights under the 1982 sales contract. Also involved in that action was the temporary restraining order preventing the members of New Board # 1 from holding themselves out as newly elected board members. This action has never been heard on the merits. The court that does eventually hear the 1991 declaratory judgment action will be deciding some of the same issues that were presented in this present declaratory judgment action filed by the Estes Board. A major issue in the 1991 declaratory judgment action will be the question of membership in Lake and the rights that Lake has to take actions affecting the members. That issue was decided by Judge Cherner in this present declaratory judgment action.
The Estes Board argues that this action involves parties different from those who *16 were parties to the 1991 declaratory judgment action. However, three members of New Board # 1 are also members of the Evans Board. Moreover, it is clear that the Evans Board members are acting in concert with those who took nearly identical actions a year earlier in attempting to elect a board of directors to wrest control of Lake from the Estes Board. We hold that the two groups are so closely related as to constitute the same party for the proposes of this action.
The 1991 declaratory judgment action was transferred to the bankruptcy court as part of an adversary proceeding concerning the Chapter 11 bankruptcy of Golf. If the district court determines that the bankruptcy court should determine the questions presented in the 1991 declaratory judgment action, then the parties could be faced with inconsistent adjudications. The bankruptcy court’s order of January 9, 1995, is ambiguous as to what ruling Judge Chemer was allowed to make, but it certainly did not constitute a remand of the 1991 action for consideration in conjunction with this action. On the contrary, the bankruptcy judge would not have had the jurisdiction to issue such a remand, because that question was before the district court on the appeal of the earlier remand.
We hold that Judge Cherner should have declined to hear and make findings in this declaratory judgment action while the prior action on the same issue was before the federal courts. Thus, the judgment is due to be reversed and the cause remanded for further proceedings.
We studied this complex case in detail before determining that reversal is the only proper result. We regret the necessity of putting the parties and the courts to further proceedings in this already protracted litigation. For the guidance of the parties and the courts in such further proceedings, however, we offer the following observations as obiter dicta. It seems that the dispute will turn on a series of questions. The first question is whether the board of directors of Lake had authority in December 1991 to impose the $100 assessment for legal expenses. The Evans Board contends that Lake’s board did not have such authority because Lake’s bylaws allow it to impose “special assessments for any purpose in connection with providing, operat[ing] and maintaining the facilities of the club, provided that such action shall be adopted by a majority of the entire Board of Directors.” The Evans Board contends that the assessment in question has no connection with “providing, operat[ing], and maintaining the facilities of the club.” The Estes Board responds with the argument that, unless it maintained the litigation against Golf, the membership of Lake would have been deprived of any means to enforce its exclusive right to enjoyment of the club facilities, as guaranteed by the addendum to the 1982 agreement. We tend to agree that Lake had the right to impose the assessment to protect the rights of its members in the use of the club facilities.
The second question is whether Lake had the authority to suspend members who did not pay the assessment. The Evans Board contends that the 1982 contract and sale gave all rights over the membership of Lake to Golf. However, this interpretation would nullify the provision that requires Golf to operate the club for the benefit of the members of Lake. If it had sole power to determine the membership of Lake, it would have the power to circumvent its duty to those members simply by terminating the membership of those who took the position that Golf was not acting in their interest. The Addendum gives Golf “final decision-making power regarding admission of members and operation of the Club,” but we do not read this power over admission of new members as removing from Lake all power to declare whether its existing members are members in good standing.
■ Assuming, then, that the board of directors of Lake had the authority to impose the assessment and to suspend its members who did not pay the assessment, the next question would be whether the board had the authority to suspend elections in 1992, 1993, and 1994 and continue to serve. The Evans Board argues that the board of directors of Lake does not have such power and that therefore the Estes Board had no authority to continue in office. However, the by-laws give the board broad power “to do such *17 things not inconsistent with the Charter of the Corporation, the By-Laws, and the State of Alabama, as may seem desirable for the welfare of the club.” Moreover, the directors “shall hold office until their terms of office expire or until their successors have been elected and qualified.” The Estes Board suggested to the members it considered to be in good standing that the ongoing litigation and the circumstances thereof required the existing Board to continue without conducting the regularly scheduled elections, and those members agreed. Judge Cherner found those actions to be proper under the circumstances, and his findings on this point are supported by the evidence.
We caution that the immediately foregoing remarks are not our holding in the case, only our observations as to what would be our likely holdings if the questions were effectively presented. However, because the pen-dency of the similar claims in the bankruptcy court required the circuit court to decline to decide this ease, as we have held above, the judgment must be reversed.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.

. The Evans Board includes Tony Evans, Donald R. Matthews, Harry E. Littleton, Orville Story III, A.E. "Bud” Bums, James E. Daily, Tommy Tucker, Wayne Leslie, Trey Stengall, and Tim Bates. The complaint alleges that Frankie Har-bison, Don A. Rogers, Charles Elliot, Gary Bow-ens, Gary Cobb, Mike Smithson, Tommy Hammett, and Jim Hickman are holding themselves out as the 1993 election committee that nominated five of the persons included in the Evans Board for election to the board of directors of Lake. The defendants assert that Evans, Story, and Daily resigned from the board and that Har-bison and Cobb were appointed to fill two of the vacancies created by the resignations.

. The Estes Board includes J. Terry Estes, William C. Whilden, John C. Grabowski, Charles M. Morrison, Scott Culpepper, Robert Patrick, Steve Davis, Frederick P. Ellenburg, Ronald Brandon, Ernest Hamic, Don Viger, Sr., and Ed Virgin, Sr.

. Paragraph two of "Addendum # 1" to the sales contract states:
“2. The Purchaser agrees to use the real and personal property conveyed by the seller as a country club and agrees to operate said club as a golf and country club for the benefit of the members of Cumberland Lake and Country Club, Inc.”

. Oliver Story, Tommy Hammet, and Chuck Elliot, named as defendants in this action, were also enjoined by the temporary restraining order issued in CV-91-9481.

.On August 13, 1993, the Internal Revenue Service sold the stock of Golf, which had been seized pursuant to a tax lien. According to a brief filed in the circuit court on behalf of Lake, Lake bought the stock at that sale, but the principals of Golf did not recognize Lake's ownership.