758 So.2d 560 (1999)
Christopher LUCKIE
v.
CITY OF MONTGOMERY and Corporal D.P. Griffin, individually.
2971179.
Court of Civil Appeals of Alabama.
February 12, 1999.
Rehearing Denied April 9, 1999.
*561 Deborah F. Coe, Montgomery, for appellant.
J. Bernard Brannan, Jr., and Marc A. Starrett of Brannan & Guy, P.C., Montgomery, for appellees.
WRIGHT, Retired Appellate Judge.
On March 7, 1997, Christopher Luckie sued both the City of Montgomery and Corporal D.P. Griffin, individually, asserting claims of malicious prosecution, false imprisonment, assault and battery, and outrage. The City and Griffin filed a motion to dismiss, which the trial court denied.
In a letter to Luckie's attorney, the City attorney stated that he intended to file a motion for a summary judgment and requested an offer to settle the case. He also stated, "I feel very confident that I can prevail on the summary judgment and re-initiate proceedings against your client for DUI if I am forced to do so." Thereafter, the City attorney withdrew from the case, and new counsel was substituted for the City and Griffin. Subsequently, the City and Griffin filed a motion for a summary judgment. Six days later, the City reissued a warrant for Luckie's arrest, based upon the affidavit of Griffin. The City rearrested Luckie, on the original charge. Luckie filed an opposition to the summary judgment motion, along with supporting affidavits and documents. The trial court granted the summary judgment motion and entered a judgment in favor of the City and Griffin. Luckie filed a post-judgment motion, which the trial court denied.
Luckie appeals, contending that the trial court erred in granting the City and Griffin's summary judgment motion. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
A motion for a summary judgment may be granted when no genuine issue of a material fact exists and the moving party is entitled to a judgment as a matter of law. Lewis v. State Farm Mut. Auto. Ins. Co., 705 So.2d 503 (Ala.Civ.App.1997). If the moving party makes a prima facie showing that no genuine issue of a material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence demonstrating the existence of a genuine issue of a material fact. Id.
The record reveals the following pertinent facts: On October 9, 1996, at approximately 8:30 p.m., Luckie had dinner with a friend, Jennifer Barnhart, at a local restaurant in Montgomery. According to Barnhart, Luckie consumed one wine spritzer with dinner. Barnhart and Luckie left the restaurant together in Barnhart's automobile and went to Barnhart's apartment, where Barnhart changed clothes. They returned to the restaurant *562 at approximately 10:00 p.m. Luckie left the restaurant in her automobile.
While driving home, Luckie, who was travelling on North Burbank Drive, used her car phone to call a friend, Stacy Price. Luckie approached the intersection of Burbank Drive and Atlanta Highway, where Steven Smyly's automobile was stopped at a red light. As Luckie ended her conversation with Price, the traffic light turned green. Assuming that Smyly would proceed, Luckie drove forward. Smyly did not proceed, and Luckie's automobile tapped the rear of Smyly's automobile. Smyly and Luckie exited their automobiles and examined Smyly's automobile for damage. They noticed a slight scratch on the rear bumper of Smyly's automobile, but observed no damage to Luckie's automobile. A police car pulled into a nearby gasoline station, and officer Griffin motioned for them to pull into the station. Smyly and Luckie moved their automobiles into the parking lot of the station. They explained the accident to Griffin and exchanged insurance information. Griffin told them that they could leave. Smyly drove away. Luckie got into her automobile and was preparing to leave, when Griffin walked over and asked her to exit her automobile. Griffin asked Luckie to perform various field sobriety tests. He asked her how much she had drunk, and Luckie told Griffin that she had one wine spritzer with dinner. Griffin arrested Luckie for DUI and searched her automobile. He did not find any alcohol containers in the automobile, nor did he find a prescription drug bottle in the automobile. Griffin transported Luckie to a police station. When they arrived at the station, Griffin had Luckie perform two Breathalyzer tests. On both tests Luckie registered a .01 result. Griffin's supervisor advised Griffin to arrest Luckie if he felt that Luckie was driving under the influence. Griffin then asked Luckie about various illnesses and medications. Luckie informed Griffin that she had taken "a nerve pill" that morning, but she had a prescription for the medication. Griffin booked Luckie on the charge of driving "[u]nder the combined influence of alcohol and a controlled substance to a degree which renders [one] incapable of safely driving." § 32-5A-191(a)(4), Ala.Code 1975. Griffin then completed an Alabama Uniform Traffic Accident Report, a DUI affidavit, a sobriety examination report, and an implied consent questionnaire.
In the DUI affidavit presented to the City magistrate, Griffin stated that he had observed Luckie swaying while standing, that she had bloodshot eyes, and that she was incoherent. He also stated that Luckie initially denied having any alcohol, but later admitted to having "a couple of glasses of wine at a restaurant." Griffin listed the various sobriety tests that Luckie failed and the one she passed.
In his deposition, Griffin stated the following: At the accident scene, he could understand Luckie's answers to his questions; her speech was not slurred; she was not confused; and she did not mumble. He also stated that he did not see Luckie drive erratically. Griffin admitted that Luckie was upset and crying, which could account for her watery eyes, and that she did not smell of alcohol.
In response to the City and Griffin's summary judgment motion, Luckie submitted affidavits from Barnhart, Smyly, Price, and her treating physician. Barnhart stated that Luckie had one wine spritzer with dinner and that she did not see Luckie staggering or swaying. She also stated that she worked as a bartender and that it was important for her to notice when someone was drunk. Barnhart further stated that she saw no indication that Luckie was drunk or incoherent when Luckie left. Smyly stated that Luckie did not stagger or sway at any time while he was at the gas station. He also stated that Luckie did not smell of alcohol or appear to be intoxicated, and that at no time did Luckie appear to be under the influence of alcohol or drugs. Price spoke with Luckie just before the accident. Luckie told Price *563 that she had dinner at a local restaurant and was on her way home. Price stated that she did not notice any problems with Luckie's speech and that Luckie did not appear to be drunk. Luckie's treating physician stated that he prescribed Tranxene for Luckie as an anti-anxiety agent and that Tranxene is approved for patients who need to operate motor vehicles. He also stated that Tranxene has a mild sedative effect, that Tranxene "is normally dosed every eight hours," and that he would not expect any patient to be under the influence of Tranxene 14 hours after ingesting the medication.
The record reveals inconsistencies between the accident report prepared by Griffin and the testimony of the witnesses. The accident report indicates that Luckie and Smyly were traveling in opposite directions, and that Luckie was in a 25 m.p.h. zone, while Smyly was in a 35 m.p.h. zone. Witness accounts of the accident reveal that Luckie was traveling behind Smyly, that they were headed in the same direction, and that they were in the same speed zone. The accident report also indicates that Luckie was traveling at a speed of "999" m.p.h., but there was no damage to either vehicle as a result of the collision. The accident report further indicates that there were no witnesses to the accident, although Griffin observed the accident and required Luckie and Smyly to exchange insurance information.
Griffin claims that he is immune from suit under § 6-5-338, Ala.Code 1975. That section provides, in pertinent part, as follows:
"(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.
"(b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours."
This section extends discretionary function immunity to municipal police officers unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith. Couch v. City of Sheffield, 708 So.2d 144 (Ala.1998).
In Couch, the police officer submitted an affidavit stating that he believed he had probable cause to arrest Couch based upon Couch's demeanor and appearance. In this case, Griffin did not submit an affidavit in support of his summary judgment motion, stating that he believed that he had probable cause to arrest Luckie. Griffin's deposition testimony directly contradicts his affidavit testimony. Additionally, Griffin's affidavit testimonythat Luckie was swaying and incoherentwas contradicted by the affidavit testimony of Barnhart, Price, and Smyly.
Our supreme court has held as follows:

*564 "`"Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. `In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act....' `"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."` `Probable cause to arrest is measured against an objective standard and, if the standard is met, it is unnecessary that the officer subjectively believe that he has a basis for the arrest.' The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause."'"
Couch, 708 So.2d at 155-56 (quoting Hardeman v. State, 651 So.2d 59, 67-68 (Ala.Crim.App.1994) (quoting Dixon v. State, 588 So.2d 903, 906 (Ala.1991))).
Viewing the evidence in a light most favorable to Luckie, and considering the conflicting testimony of Griffin, we conclude that there is a question of fact as to whether Griffin had probable cause to arrest Luckie. Therefore, we conclude that there exists a genuine issue of material fact as to whether Griffin's arrest of Luckie was in bad faith or done with a malicious or a willful intent.
The City contends that it is immune from Luckie's claims for intentional, reckless, or wanton torts under § 11-47-190, Ala.Code 1975. That section provides as follows:
"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line and scope of his duty, or unless said injury or wrong was done or suffered through the neglect, carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the council or other governing body or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable to an action for damages by reason of the unauthorized or wrongful acts or the negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured."
Our supreme court has held that § 11-47-190 immunizes municipalities from claims involving intentional acts, including malicious prosecution. Franklin v. City of Huntsville, 670 So.2d 848 (Ala. 1995); Altmayer v. City of Daphne, 613 So.2d 366 (Ala.1993); Scott v. City of Mountain Brook, 602 So.2d 893 (Ala.1992). Accordingly, we conclude that the City is immune from Luckie's claim of malicious prosecution and the tort of outrage involving her first arrest. Our supreme court has also held that a municipality is not immune, under § 11-47-190, from claims of false arrest and false imprisonment. Franklin. Therefore, we conclude that the City is not immune from Luckie's claims of false arrest, false imprisonment, and assault and battery. Id.
Citing City of Mobile v. Sullivan, 667 So.2d 122 (Ala.Civ.App.1995), the City also asserts that it is entitled to "substantive immunity" from liability of any negligence on the part of Griffin; however, the City did not assert this defense before the trial court. "Our review is limited to the issues that were before the trial courtan *565 issue raised on appeal must have first been presented to and ruled on by the trial court." Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992) (citation omitted). Therefore, we make no determination as to whether the City is entitled to "substantive immunity."
Because we have concluded that genuine issues of material fact exist relating to probable cause to arrest, the summary judgment entered in favor of Griffin is due to be reversed. The summary judgment entered in favor of the City on Luckie's claims of malicious prosecution and tort of outrage is due to be affirmed; the summary judgment on the claims of false arrest, false imprisonment, and assault and battery is due to be reversed. Franklin, supra.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur in part and dissent in part.
CRAWLEY, Judge, concurring in part and dissenting in part.
I would affirm the summary judgment in its entirety for both the City and Griffin. The trial court entered a summary judgment for the City and Griffin several months after they had filed their summary-judgment motion. Luckie did not file a response to the summary-judgment motion; instead, after the motion was granted, she filed a motion to set aside the summary judgment and argued that she had not completed discovery. See Rule 56(f), Ala. R. Civ. P. The supreme court has held that one opposing a summary-judgment motion on the basis that discovery is incomplete must file a response. Ex parte Wal-Mart Stores, Inc., 689 So.2d 60 (Ala.1997). Luckie did not respond to the summary-judgment motion until after the trial court had ruled on it; therefore, I would affirm the summary judgment.
THOMPSON, J., concurs.