This case concerns the liability of a municipality.
In September 1993, James Sullivan and Robert Clark sued the City of Mobile (City) and Ann P. Field. The action arose out of Sullivan and Clark's purchase of a parcel of land from Field. Sullivan and Clark alleged four causes of actions against Field, the crux of them being that Field, as seller, failed to disclose, prior to the sale, that the property was not, in fact, zoned for commercial use as indicated. Subsequently, the claims against Field were dismissed without prejudice, and the case against the City proceeded to trial. The only allegation against the City was that its agents and employees, acting within the line and scope of their duty, had "negligently represented" to Sullivan and Clark that the property was zoned for commercial use, and, *Page 124 
as a result, that they had suffered a monetary loss. The City's motion to dismiss was denied in November 1993, and ultimately, the City answered, denying the allegations of the complaint.
In June 1994, a bench trial was held. At the close of the presentation of Sullivan and Clark's evidence, the City moved for an involuntary dismissal, pursuant to Rule 41(b), A.R.Civ.P., asserting, among other things, that the City "has substantive immunity to [Sullivan and Clark]'s claims." The trial court denied that motion. On June 27, 1994, the trial court entered an order, finding that "this case represents an exception to the doctrine of municipal immunity," and, without further elaboration, awarded Sullivan and Clark $42,000. The City's post-judgment motion was denied, and in August 1994, the City appealed to our Supreme Court. In December 1994, the appeal was transferred to this court, pursuant to Ala. Code 1975, § 12-2-7.
The City presents two issues on appeal: (1) whether the trial court erred in determining that the City is not substantively immune from Sullivan and Clark's claims, citing Rich v. City ofMobile, 410 So.2d 385 (Ala. 1982), and Hilliard v. City ofHuntsville, 585 So.2d 889 (Ala. 1991), and (2) whether the City is immune from a lawsuit based upon "alleged fraud" committed by its agent, citing Ala. Code 1975, § 11-47-190, and Altmayerv. City of Daphne, 613 So.2d 366 (Ala. 1993). The dispositive issue is whether the trial court erred in holding the City liable to Sullivan and Clark.
Where the evidence is presented to the trial court ore tenus, its findings are entitled to a presumption of correctness and will not be disturbed unless the court plainly and palpably abused its discretion. Ex parte Board of Zoning Adjustment ofthe City of Mobile, 636 So.2d 415 (Ala. 1994). That presumption is inapplicable where it is shown that the trial court improperly applied the law to the facts. Board of ZoningAdjustment, supra.
The record discloses that, after deciding to open a used automobile business in January 1993, Clark and Sullivan engaged H.D. Kemp, a real estate agent, now deceased, to locate suitable property, in a particular area, for that purpose. Sullivan testified that Kemp was told that the property had to be properly zoned for their purpose. Subsequently, according to Sullivan, Kemp located a parcel of property in the preferred location and advised that it was zoned B-3, the zoning needed for their intended business. Sullivan testified that he instructed Kemp to verify the zoning of the property, and that he and Clark were provided with a letter from the City, via Kemp, verifying that the property was zoned B-3. The letter was dated February 18, 1993. Sullivan testified that he and Clark entered into negotiations to purchase the property after receiving the City's letter. The deed is dated February 26, 1993.
Sullivan testified that he and Clark began making the necessary improvements to the land and preparations to begin the business after they received a zoning certificate from the City, indicating that the property was zoned B-3. Sometime in April, Sullivan and Clark received a telephone call from the City's attorney, informing them that there had been a misunderstanding about the zoning, and that the City was going to have a stop order issued. The City informed Sullivan and Clark that there was a mistake on the zoning map, and that it would recommend a variance on the property as actually zoned. The parcel of land that Sullivan and Clark had purchased was actually two lots, one zoned R-1, single family residential, and the other zoned B-1, community business or office use. Sullivan testified that at this point in time, in addition to incurring costs for improvements, they had already purchased inventory for the business.
Sullivan and Clark applied for a variance, which the City granted, with certain restrictions regarding fencing, lighting, and an outdoor public address system. According to Sullivan and Clark, the restrictions were unworkable and placed them at a competitive disadvantage with a neighboring car lot that was already operating, and made it unfeasible or impossible to operate their business on the property. Sullivan further testified that they requested a zoning change, but in a letter dated June 18, 1993, the City Planning Commission stated that it would recommend *Page 125 
to the City Council that their request be denied. Subsequently, Sullivan and Clark abandoned the pursuit for a zoning change. Sullivan testified that he thought Kemp was the agent for Sullivan and Clark, as well as Field, that he had had no contact with the City, and that he had made no independent investigation regarding the zoning.
Clark testified that after he insisted on having documentation from the City verifying that the property was properly zoned, Kemp obtained the letter from the City to effect the sale. He further testified that he personally viewed the City's zoning map, which indicated that the property was zoned B-3. According to Clark, Kemp had been their agent on other real estate transactions, he was their agent regarding locating this property, and he was Field's agent regarding the actual sale.
Sullivan testified that, in his opinion, the property was worth approximately $6,000 without B-3 zoning, and approximately $65,000 with B-3 zoning. M.D. Bell, Jr., the City's expert, stated that the property as zoned, B-1 and R-1, was worth approximately $31,700, and that the property, as zoned with the use variances, was worth approximately $41,200. Sullivan and Clark paid $53,500 for the property.
The parties disagree regarding the nature of Sullivan and Clark's claim against the City. The City contends that because of the way Sullivan and Clark characterized their claim, it involves a type of tortious conduct for which the City has immunity. Specifically, the City argues that, pursuant to Ala. Code 1975, § 11-47-190, it is immune from Sullivan and Clark's claim. Sullivan and Clark contend that their complaint alleges negligence.
Numerous principles regarding zoning, municipality liability, and substantive immunity emerge as guidance in this decision. In pertinent part, Ala. Code 1975, § 11-47-190, states:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty."
(Emphasis added.)
Our Supreme Court has interpreted this statute to absolve "a municipality from liability for the intentional torts of its agents." Altmayer v. City of Daphne, 613 So.2d 366, 369 (Ala. 1993). Altmayer involved claims of willful and reckless misrepresentation and promissory fraud based on alleged assurances made by an agent of the City.
Although a municipality is liable for the negligence of its agents or employees, acting within the line and scope of their employment, there must first be a breach of a legal duty owed by the municipality before liability can be imposed upon it.Hilliard v. City of Huntsville, 585 So.2d 889 (Ala. 1991); Richv. City of Mobile, 410 So.2d 385 (Ala. 1982). The initial focus, when a claim is asserted against a municipality, should be upon the nature of the duty. Hilliard, 585 So.2d 889;Shearer v. Town of Gulf Shores, 454 So.2d 978 (Ala. 1984). "There must be either an underlying common law duty or a statutory duty of care with respect to the alleged tortious conduct." Hilliard, 585 So.2d at 890.
The City argues that its agent was not required by state law or by its own ordinances to provide a letter regarding the zoning of this property. Although municipalities are not required by state law to enact zoning ordinances or regulations, they are authorized to do so. Ala. Code 1975, §11-52-70, states, in pertinent part, that a municipality
 "may divide the territory within its corporate limits into . . . zones or districts and may provide the kind, character and use of structures and improvements that may be erected or made within the several zones or districts established and may . . . rearrange or alter the boundaries of such zones or districts."
There exists a narrow exception to the general rule that a municipality is chargeable with the negligence of its agents or employees performing in the line and scope of their duty.Rich, 410 So.2d 385. In *Page 126 Rich, our Supreme Court has stated that public policy considerations
 "override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services."
Rich, 410 So.2d at 387. This exception, commonly known as the substantive immunity rule, is to "be given operative effect only in the context of those public service activities of governmental entities . . . so laden with the public interest as to outweigh the incidental duty to the individual citizens."Rich, 410 So.2d at 387-88; see also Hilliard, 585 So.2d 889. Substantive immunity applies in cases where the benefit received by an individual is merely incidental to the benefit derived by the citizens of a municipality in general. Hilliard,585 So.2d 889.
This court has stated that "zoning laws are an exercise of a city's police power and are implemented for the protection of the public welfare." Martin v. Board of Adjustment of the Cityof Enterprise, 464 So.2d 123, 125 (Ala.Civ.App. 1985), citingWalls v. City of Guntersville, 253 Ala. 480, 45 So.2d 468
(1950). In addressing the propriety of a statute concerning a comprehensive zoning plan, our Supreme Court stated that "zoning ordinances must be enacted with the general welfare of the entire community in mind." Come v. Chancy, 289 Ala. 555,563, 269 So.2d 88, 96 (1972).
The City argues that its larger obligation in the area of zoning is to the public generally, and not to any particular individual. Sullivan and Clark assert that their specific inquiries regarding the zoning of the property and the assurances they received served to set them apart from the general public and imposed a duty to the specific individual, rather than to the public as a whole. They assert a "special relationship" exception to the substantive immunity rule. They urge adoption of this "special relationship" exception as recognized by other jurisdictions, citing Meaney v. Dodd,111 Wn.2d 174, 759 P.2d 455 (1988), and Taylor v. Stevens County,111 Wn.2d 159, 759 P.2d 447 (1988). The City, however, argues that a property owner is held responsible for knowledge regarding the zoning classification of their property, citingHermer v. City of Dover, 106 N.H. 534, 215 A.2d 693 (1965).
Our Supreme Court, in reviewing a case regarding a city's inspection of electrical wiring, noted that
 "[t]he fact that the law does not mandate that a municipality provide inspections in order to protect the lives and property of its residents tends to increase the probability that the imposition of tort liability in this area would serve only to destroy the municipality's motivation or financial ability to support this important service."
Hilliard, 585 So.2d at 892. That Court has also noted that the imposition of liability upon a municipality, particularly where one's reliance upon the service provided by the municipality is secondary and inferential to their reliance upon another party, necessarily threatens the benefits of such service to the public at large. Rich, 410 So.2d 385.
The difficulty inherent in attempting to set forth a clear test regarding the general rule of municipal immunity has been acknowledged by our Supreme Court and followed with this recommendation: "We believe the wiser course is to allow the rule to evolve through the judicial process of trial and review on a case by case basis." Rich, 410 So.2d at 387. While our courts have not been presented, per se, with the question of whether the doctrine of substantive immunity may bar a claim such as the one asserted by Sullivan and Clark, the doctrine of substantive immunity has been narrowly applied.
Generally, a municipality is not liable for negligent or deficient electrical, plumbing, or other inspections, or for failure to provide adequate police protection. See, e.g.,Hilliard, 585 So.2d 889 (electrical inspection); Calogrides v.City of Mobile, 475 So.2d 560 (Ala. 1985) (police protection); and Rich, 410 So.2d 385 (plumbing inspection). There is a long line of cases holding counties and municipalities generally liable for failing to properly maintain or operate their sewer and *Page 127 
drainage systems, streets, public ways, or buildings. See e.g.,Long v. Jefferson County, 623 So.2d 1130 (Ala. 1993); Garner v.Covington County, 624 So.2d 1346 (Ala. 1993); and JeffersonCounty v. Sulzby, 468 So.2d 112 (Ala. 1985). In rejecting an argument regarding substantive immunity, our Supreme Court stated:
 " '[M]unicipalities are authorized to construct and maintain drainage systems, and, while a municipality is not required to exercise this authority, once it does so, a duty of care arises and a municipality may be liable for damages proximately caused by its negligence.
 " 'We find that the liability for negligent design or maintenance of drainage systems is analogous to that involved in the construction and maintenance of streets, alleys, or public ways or buildings, and, thus, that the city is not immune in this case.' "
Long, 623 So.2d at 1136. (Citations omitted.)
The specific facts in this case required the trial court to determine whether the City was responsible to Sullivan and Clark for damages suffered through repeated erroneous representations made by the City regarding the zoning of this property. The evidence is undisputed that, on several occasions when Sullivan and Clark specifically inquired, the City advised Sullivan and Clark that the property was zoned B-3, and that Sullivan and Clark relied on that information in deciding to purchase this property and incur the costs to prepare and improve the property to open a business. To hold that the City was not liable for these erroneous representations appears inconsistent with the spirit and purpose of Ala. Code 1975, § 11-47-190.
The substantive immunity rule is a narrow exception to the general rule that a municipality is chargeable with the negligence of its employees or agents performing in the line and scope of their duty. Ala. Code 1975, § 11-47-190. The City has failed to disclose any evidence surrounding this case that would permit its actions to fall within this narrow exception. While the City may be correct in its position that it was not required to provide Sullivan and Clark with the letter verifying the zoning of the property, it appears to this court that our Supreme Court rejected a similar defense in Long, 623 So.2d at 1136. Without determining that the City's letter alone gave rise to the City's liability in this situation, the trial court may have followed the rationale in Long to determine that the City's exercise of its authority, in providing the written verification regarding zoning, created a specific duty of care.
While the trial court's order did not specify what evidence it relied upon to hold the City liable, the record contains substantial evidence supporting the trial court's holding, including: (1) that, upon request, the City provided written verification that the property was zoned B-3; (2) that Clark personally viewed the City's zoning map, which indicated that the property was zoned B-3; and (3) that, after requiring Sullivan and Clark to submit a site plan detailing the layout of the proposed car lot, the City issued a zoning certification to Sullivan and Clark indicating that the property was zoned B-3. It is unnecessary for this court to determine with specificity which of these acts gave rise to the City's liability for damages "suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty." Ala. Code 1975, § 11-47-190. The evidence would support a finding that these misrepresentations by the City, whether separately or collectively, caused the damages Sullivan and Clark claimed. Accordingly, it was not error for the trial court to hold the City liable for its erroneous representations.
At first glance, this result appears harsh and may be interpreted as exposing municipalities to an endless stream of lawsuits, or, at a minimum, discouraging municipalities from providing their citizens with information or services that the municipalities are not required to provide or to perform. It is important to note that the developing law in the area of municipal liability and substantive immunity, when applied to the unique facts in this case, dictates this outcome, and in our struggle to decide these cases on a case-by-case basis, we strictly narrow this holding to this case. Nothing in this opinion should be construed to indicate that this exact result *Page 128 
would occur in a similar, but not identical, situation.
Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.