MOORE, Judge.
Timothy A. Payne and Frances L. Payne appeal from a summary judgment in favor of the Shelby County Commission and the Shelby County Planning Commission. We affirm.

Procedural History

On June 6, 2006, the Paynes sued B & CC, LLC; Rick Burch; Burch Properties, LLC; the Shelby County Commission; and the Shelby County Planning Commission. Against the County Commission and the Planning Commission, the Paynes alleged claims of misrepresentation; suppression; deceit; promissory fraud; breach of contract; and negligence and/or *74 wantonness. Those claims arose out of a conditional rezoning resolution adopted by the Planning Commission in 2001 concerning property located adjacent to the Paynes’ property and the County Commission’s and the Planning Commission’s efforts, or lack thereof, to enforce that rezoning resolution.
The County Commission and the Planning Commission filed a joint motion for a summary judgment. On January 4, 2008, the trial court granted that motion in favor of both defendants. The trial court certified that order for interlocutory review, pursuant to Rule 54(b), Ala. R. Civ.App. The Paynes appealed, asserting that the trial court had erred in entering the summary judgment in favor of the County Commission and the Planning Commission.[1]

Factual History

In 2001, the unidentified owner of a 9.5-acre tract of land located in an unincorporated area of Shelby County filed a request with the Planning Commission to rezone the land from an “E-2 Single Family Estate” to an “O-l Office and Institutional District.” The Planning Commission considered the rezoning request at an October 1, 2001, meeting. Several property owners from Havenwood Park, a subdivision located adjacent to the 9.5-acre tract, opposed the request. The Paynes’ home was located in Havenwood Park, and they were among the property owners opposed to the rezoning request. However, the Planning Commission adopted a resolution rezoning the 9.5-acre tract as requested, subject to the following conditions:
“That the Development Review Committee shall ensure that there will be a minimum 50' setback adjacent to all residential property, undisturbed if possible; architectural character of any improvements will be limited to 2 stories in height with steeply pitched roofs and an exterior design reflecting residential character; the maximum footprint of any structure on the property shall not exceed 5,000 square feet; a detailed erosion control and storm water runoff plan shall be provided; light fixtures shall not exceed 20' in height and shall not spill over onto adjoining properties; a detailed traffic study including traffic counts, potential and proposed improvements on Valleydale Road shall be provided by the applicant.
“... [T]hat following review by the Development Review Committee, the site plan will be scheduled to go to the Planning Commission for final approval.”[2]
The 9.5-acre tract sat idle until 2005, when Rick Burch and his company, Burch Properties, LLC (hereinafter referred to collectively as “Burch”), filed a site plan for approval with the Shelby County Department of Development Services (“the Department”).[3] The site plan was as *75 signed for review to Michelle O’Neal, who was employed with the Department. On March 29, 2005, O’Neal notified Burch that his site plan was deficient and could not be approved until he addressed several identified areas. Because of the deficiencies in Burch’s proposed site plan, it was not placed on the Planning Commission’s May 2005 agenda. Burch asked the Planning Commission to continue the matter to the June 2005 meeting.
Around the same time that Burch submitted his site plan to the Department, he began clearing and grading the 9.5-acre tract. Beginning in March 2005, the Department began receiving complaints regarding Burch’s clearing efforts and regarding the runoff of water and sediment from the undeveloped tract. The Paynes were among those complaining to the Department. Rick Burch met with the Paynes and other homeowners in the subdivision to discuss their complaints and to discuss his plans for the 9.5-acre tract of land.
According to Timothy Payne, in July 2005 Burch agreed to build an earthen berm on the 9.5-acre tract in order to block the homeowners’ view of Burch’s office development. Timothy asserted that this plan was made known to O’Neal and that she made suggestions to Timothy and Burch as to how the berm could be addressed in Burch’s site plan. Timothy sent a letter to Burch setting forth the terms of their “agreement” as to this berm. Timothy also copied O’Neal with that letter. However, Burch and Timothy did not execute a written agreement regarding the berm.
Burch submitted his revised site plan to the Department, and the matter was placed on the agenda for the September 2005 Planning Commission meeting. Timothy objected to any consideration of Burch’s site plan because, he asserted, Burch had disturbed the buffer zone between the area to be developed and the subdivision; Burch had not constructed the berm, as purportedly agreed; and Burch had not addressed or remedied the runoff of water and sediment from his property onto the Paynes’ property. The Department did not recommend approval of the site plan, and, according to a September 19, 2005, resolution of the Planning Commission, the application was “tabled” “until the applicant can provide an acceptable landscaping plan, grading plan and demonstrate resolution of the repairs of the buffer that has been virtually eliminated.” [4]
In February 2006, Burch submitted his plans to repair the buffer zone. Although Timothy continued to argue that the site plan did not adequately comply with the 2001 conditional resolution, the Planning Commission voted to place Burch’s site-plan application on the agenda for the March 2006 Planning Commission meeting.
At the Planning Commission’s March 2006 meeting, Timothy appeared and opposed Burch’s revised site plan. However, *76 the Planning Commission voted unanimously to approve Burch’s site plan, subject to certain conditions. Among other things, the Planning Commission required (1) that “the berm and the entire northern property boundary must be planted as shown on the landscape plan and inspected by [the Department] staff before building permits will be released” and (2) that “permanent or temporary soil stabilization must be applied to disturbed areas within seven (7) days on areas that will remain unfinished for more than thirty (30) calendar days.”
The Paynes filed this action in June 2006, asserting that the County Commission and the Planning Commission were liable for negligence and/or wantonness; misrepresentation; suppression; deceit; promissory fraud; and breach of contract. Before O’Neal’s March 7, 2007, deposition, and, thus, before the County Commission and the Planning Commission filed their April 24, 2008, appellee’s brief, Burch had constructed the berm and had planted trees and shrubs on it. He had not, however, complied with the other conditions imposed on him by the Planning Commission. As a result, the Department had not issued any building permits to Burch before the County Commission and the Planning Commission filed their brief to this court.
According to O’Neal, enforcement actions against Burch were “an ongoing matter” and the Department had several options available to it. O’Neal testified that, in its efforts to enforce the rezoning resolution, the Planning Commission had continued its consideration of Burch’s site plan, had “tabled” its consideration of Burch’s site plan, had required additional plantings from him, and had declined to issue building permits to him. Another option available to the Planning Commission was to rescind the rezoning resolution. O’Neal was aware that the Shelby County zoning regulations authorized the Planning Commission to fine persons who violated those regulations; however, she had not been involved in any cases where that power had been exercised.

Standard of Review

“Our standard of review for a summary judgment is as follows:
“ ‘We review the trial court’s grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Bockman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006). Once the summary-judgment movant shows there is no genuine issue of material fact, the non-movant must then present substantial evidence creating a genuine issue of material fact. Id. “We review the evidence in a light most favorable to the nonmovant.” 943 So.2d at 795. We review questions of law de novo. Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330 (Ala.2006).’ ”
Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 793 (AJa.2007) (quoting Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 346 (Ala.2006)).

Analysis

The Paynes assert that the County Commission and the Planning Commission are subject to tort liability for falsely representing that the conditions placed on the conditional rezoning resolution would be met; for suppressing the fact that they had no power to ensure that the conditions placed on the 9.5-acre tract would be met; for falsely promising that the residential character of the Paynes’ property would be preserved through the placement of re *77 strictions on the manner in which the 9.5-acre tract could be developed; and for negligently or wantonly failing to enforce the rezoning resolution at issue in this case. The Paynes also assert that they, along with the County Commission and the Planning Commission, were parties to a contract in which Burch agreed to build an earthen berm to restore the buffer zone between the 9.5-acre tract and the residential subdivision.

The Paynes’ Tort Claims

In contrast to the state, which is entitled to immunity under the Alabama Constitution of 1901, § 14, counties and municipalities are generally chargeable with the negligence of their employees acting within the line and scope of their employment. Rich v. City of Mobile, 410 So.2d 385, 387 (Ala.1982). The courts have acknowledged the difficulty inherent in determining county and municipality tort liability and have repeatedly stated that such liability must be determined on a case-by-case basis.[5] See Rich, 410 So.2d at 387.
However,
“before liability for negligence can be imposed upon a governmental entity, there must first be a breach of a legal duty owed by that entity. Shearer v. Town of Gulf Shores, 454 So.2d 978 (Ala. 1984). In determining whether a claim is valid, the initial focus is upon the nature of the duty. Rich v. City of Mobile, 410 So.2d 385 (Ala.1982). There must be either an underlying common law duty or a statutory duty of care with respect to the alleged tortious conduct.”
Hilliard v. City of Huntsville, 585 So.2d 889, 890 (Ala.1991).
Thus, in order to determine whether the trial court properly entered a summary judgment in favor of the County Commission and the Planning Commission on the Paynes’ tort claims, we must determine whether they owed a common-law or statutory duty of care to the Paynes. The determination of whether a duty exists is a question of law for the court to decide. Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 837 (Ala.2003); and Rose v. Miller & Co., 432 So.2d 1237, 1238 (Ala. 1983).
The County Commission and the Planning Commission assert, among other things, that they owed no duty to the Paynes because they were entitled to “substantive immunity” in connection with the adoption of the conditional rezoning resolution and their decisions as to how best to enforce that resolution against Burch. The “substantive immunity” rule is a narrow exception to the general rule that a municipality or a county is chargeable with *78 the negligence of its employees or agents performed in the line and scope of their duty. Rich v. City of Mobile, 410 So.2d at 387. This exception is based on
“public policy considerations ... [that] override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City’s legitimate efforts to provide such public services.”
Id. The court in Rich stated that “the substantive immunity rule ... must be given operative effect only in the context of those public service activities of governmental entities ... so laden with the public interest as to outweigh the incidental duty to the individual citizens.” 410 So.2d at 387-88. Thus, we must determine whether a county’s exercise of its zoning power is a public-service activity so laden with the public interest as to outweigh any incidental duty that activity might create to an individual citizen.
As recognized in Pollard v. Unus Properties, LLC, 902 So.2d 18 (Ala.2004), “ ‘[t]he authority for zoning laws is found within the bounds of the police power, asserted for the public welfare’ ” and zoning restrictions must “ ‘bear some substantial relation to the public health, safety, morals, or general welfare, or as otherwise elsewhere expressed, the “public convenience or the general prosperity.” ’ ” 902 So.2d at 23, 24 (quoting Leary v. Adams, 226 Ala. 472, 474, 147 So. 391, 392 (1933)).[6] See also COME v. Chancy, 289 Ala. 555, 563, 269 So.2d 88, 96 (1972) (“[Z]oning ordinances must be enacted with the general welfare of the entire community in mind.”).
Further, in § 11-3A-2, Ala.Code 1975, the legislature granted the county commission of each county of this state the authority to “provide for its property and affairs; and for the public welfare, health, and safety of the citizens throughout the unincorporated areas of the county by exercising certain powers for the protection of the county and public property under its control.” Pursuant to this authority, the Shelby County Planning Commission was created and granted the authority to zone, with the approval of the Shelby County Commission, “all areas of the county outside the boundaries of municipal corporations.” Ala. Acts 1982, Act No. 82-693, § 3.
Based on the foregoing, it cannot be disputed that zoning powers are a public-service activity and may not be exercised for the benefit of individual landowners to the exclusion of the interests and well-being of all citizens of a county or municipality.[7] Thus, the exercise of the zoning powers granted to a governmental body is a public-service activity to be exercised for the benefit of the governmental entity and for the well-being of the governed.
*79 Additionally, simply because an individual citizen benefits from a governmental body’s exercise of its power does not mean that such power was exercised for that citizen’s benefit. For example, in Hilliard v. City of Huntsville, supra, our supreme court held that the City of Huntsville was entitled to substantive immunity with respect to Hilliard’s claims of negligent or wanton inspection of wiring at an apartment complex. The court stated:
“The city, like most municipalities, elects to perform electrical inspections as a benefit to itself and to the general public. While individuals receive a benefit from these inspections, that benefit is merely incidental to the benefit derived by the citizens in general. Although an individual driver benefits by the state’s testing and licensing of drivers of motor vehicles, the state in so testing and licensing drivers does not guarantee to individual drivers that all licensed drivers are safe drivers.”
Hilliard, 585 So.2d at 891. As recognized in Hilliard, supra, any benefit received by the Paynes as a result of the County Commission’s and the Planning Commission’s exercise of their zoning power was merely incidental to the benefit derived by the citizens of Shelby County in general.
In this case, because the County Commission and the Planning Commission exercised the power to zone for the benefit of the county and its citizens and because the County Commission and the Planning Commission could not have validly imposed conditions on the 9.5-acre tract only for the benefit of the residents of Haven-wood Park subdivision, we conclude that the adoption of the conditional rezoning resolution did not create a duty owed by the County Commission or the Planning Commission to the Paynes over and above that owed to the general public.
Additionally, the Paynes have not cited, and we have not located, any Alabama cases in which the zoning or conditional rezoning of property was held to create a specific duty owed by a governmental entity to an individual landowner. Although the Paynes rely on City of Mobile v. Sullivan, 667 So.2d 122 (Ala.Civ.App.1995), and Kennedy v. City of Montgomery, 423 So.2d 187 (Ala.1982), in support of their argument, those cases are factually and legally distinguishable.
In Sullivan, it was not the governmental act of adopting or enforcing a zoning ordinance that gave rise to a tort claim against the City of Mobile; in Sullivan, the negligent act that gave rise to a tort claim against the city was a city employee’s assurance that the property at issue was zoned in a particular manner and that the property’s current zoning was suitable for the plaintiffs intended purposes. 667 So.2d at 126-27. Because the plaintiff then relied on those assurances to his detriment, the court concluded that the plaintiff had stated a viable tort claim against the City of Mobile.[8] Id. at 127.
In Kennedy, the court held that a municipality was not immune from the plaintiffs’ tort claims in which the plaintiffs had alleged that the municipality had failed to provide adequate drainage to prevent the plaintiffs’ basement from flooding. As not *80 ed in Sullivan, such a failure is one of those fact situations in which a municipality or a county has been held liable to its citizens for negligence. See Sullivan, 667 So.2d at 126-27 (“There is a long line of cases holding counties and municipalities generally liable for failing to properly maintain or operate their sewer and drainage systems, streets, public ways, or buildings.”)- There are no such cases, however, recognizing liability for a county’s or a municipality’s negligence in exercising or failing to exercise its power to zone.
In this case, the Planning Commission exercised the legislative power granted to it by adopting the conditional rezoning resolution applicable to the 9.5-acre tract. Although in doing so the Planning Commission considered the interests of the Ha-venwood Park subdivision residents, the Planning Commission’s act of adopting the rezoning resolution was a public-service activity exercised for the well-being of all Shelby County residents under its jurisdiction, not one exercised solely for the benefit of the Havenwood Park subdivision residents or solely for the benefit of the Paynes. Because we conclude that the adoption of the rezoning resolution created no duty to any individual citizen, we conclude that the public duty to be served by the exercise of that power clearly outweighed any incidental duty owed to the Paynes. Accordingly, we conclude that the County Commission and the Planning Commission are entitled to substantive immunity for actions taken in connection with the exercise of their zoning power. See Rich, supra; and Hilliard, supra.
The acts taken by the County Commission and the Planning Commission to enforce the conditional rezoning resolution at issue in this case are also protected by substantive immunity. A governmental entity’s decision regarding how a zoning ordinance should be enforced is as much a legislative matter as is the enactment of a zoning ordinance. See § 11-52-76, Ala. Code 1976 (“The legislative body of [the] municipality shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established and enforced and from time to time amended, supplemented or changed.” (emphasis added)).
Just as we have located no Alabama case holding that a governmental entity may be held liable in tort for its actions in adopting a zoning ordinance, we have located no Alabama case holding that a governmental entity may be held liable in tort for its failure to enforce local ordinances against third parties. We have, however, found numerous cases refusing to impose liability against a governmental entity for its failure to enforce ordinances and statutes. For example, in Shearer v. Town of Gulf Shores, 454 So.2d 978, 979 (Ala.1984), our supreme court held that a state statute making it unlawful for a probate judge or a city clerk to issue a privilege license unless the applicant was in possession of a valid health permit was aimed at protecting the public health. As a result, the court concluded that the town owed no duty to an individual applicant for a privilege license to ascertain whether that applicant had a valid health permit before issuing the privilege license; the court also concluded that the town’s failure to do so did not give rise to a claim of negligence by the individual licensee when the licensee was later shut down for his violation of the statute.
In Davenport v. Neely, 7 F.Supp.2d 1219, 1231 (M.D.Ala.1998), a vehicle dealership sued, among others, the Montgomery County Commission alleging negligence in connection with its failure to properly enforce regulations applicable to the owner of adjoining property, on which a tire-recycling facility had been operated *81 in violation of certain environmental regulations. The United States District Court, in dismissing the claims against the Montgomery County Commission, stated that, “[e]ven assuming that the Commission has a ‘duty1 to ‘regulate and enforce requirements,’ Defendants have failed to cite any authority allowing for a cause of action against a governmental agency for failing to enforce regulations against private parties.” 7 F.Supp.2d at 1231. See also Davis v. City Council of Montgomery, 51 Ala. 139, 149 (1874) (holding that the city was not liable in tort for its failure to enforce an ordinance in which it was granted the authority to abate a nuisance).
Courts in other jurisdictions have also reached this same result. In Trianon Park Condominium Ass’n v. City of Hialeah, 468 So.2d 912, 914-15 (Fla.1985), the Florida Supreme Court stated:
“We hold that there has never been a common law duty to individual citizens for the enforcement of police power functions. Further, we find that no statutory duty for the benefit of individual citizens was created by the citys adoption of the building code, and, therefore, there is no tort liability on the part of the city to the condominium owners for the allegedly negligent exercise of the police power function of enforcing compliance with the building code.”
See also Maciejko v. Lunenburg Fire Dist. No. 2, 171 Vt. 542, 758 A.2d 811 (2000) (recognizing that plaintiffs had no cause of action against a city fire district arising out of its failure to enforce its ordinances); Geimer v. Chicago Park Dist., 272 Ill. App.3d 629, 630, 650 N.E.2d 585, 590, 208 Ill.Dec. 891, 896 (1995) (recognizing common-law rule that municipalities are not liable in tort and owe no duty to individual members of the general public for failure to enforce local laws and ordinances); Scheurman v. Department of Transp., 434 Mich. 619, 635, 456 N.W.2d 66, 73 (1990) (recognizing that governmental agencies are not liable for the failure to investigate or enforce ordinance violations); and Berger v. City of University City, 676 S.W.2d 39, 42 (Mo.Ct.App.1984) (recognizing that a city is not liable for failing to enforce its ordinances). If a governmental entity’s failure to investigate or to enforce its own ordinance does not give rise to a tort action, a governmental entity’s decision among various enforcement options as to how best to enforce a zoning ordinance likewise does not give rise to a tort action.
Based on the foregoing, we conclude that the County Commission and the Planning Commission were entitled to substantive immunity as to the exercise of their zoning powers. Therefore, the County Commission and the Planning Commission owed no duty to the Paynes as a result of the adoption of the conditional rezoning resolution or as a result of the County Commission’s and Planning Commission’s decisions as to how best to enforce that resolution against Burch. Without establishing that the County Commission or the Planning Commission owed them a duty, the Paynes were not entitled to maintain their claims of negligence, suppression, and deceit against the County Commission or the Planning Commission.
Additionally, the Paynes’ claims of misrepresentation and promissory fraud fail as a matter of law. As discussed above, the Planning Commission is entitled to substantive immunity for its role in adopting the conditional zoning ordinance. See, e.g., Rich v. City of Mobile, 410 So.2d at 387; and Hilliard v. City of Huntsville, 585 So.2d at 891. Additionally, a govern mental entity is not subject to tort liability for its failure to enforce local ordinances. See, e.g., Shearer v. Town of Gulf Shores, 454 So.2d at 979; and Davenport v. Neely, 7 F.Supp.2d at 1231. Thus, the Paynes *82 cannot claim that they reasonably relied upon the language of the conditional zoning ordinance to ensure that certain action would be taken by the County Commission or the Planning Commission; the Paynes likewise cannot recover in tort for the alleged failure of the County Commission or the Planning Commission to take enforcement action against Burch. Because reasonable reliance and damages are essential elements of the Paynes’ misrepresentation and promissory-fraud claims, we affirm the summary judgment as to those claims.
We also note that the Paynes failed to argue their wantonness claim on appeal. “When an appellant fails to argue an issue in its brief, that issue is waived.” Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982). Therefore, we affirm the summary judgment as to the Paynes’ claim of wantonness.
For the above-stated reasons, all of the Paynes’ tort claims fail as a matter of law. We, therefore, affirm the summary judgment entered in favor of the County Commission and the Planning Commission as to the Paynes’ claims of negligence, wantonness, misrepresentation, suppression, deceit, and promissory fraud.

Breach-of-Contract Claim

The Paynes assert that the County Commission and the Planning Commission were parties to a contract pursuant to which Burch agreed to construct an earthen berm on the 9.5-acre tract. The Paynes also assert that the County Commission and the Planning Commission are liable to them for Burch’s breach of that agreement and that, as a result, the trial court erred in entering a summary judgment on that claim.
“The elements of a breaeh-of-con-tract claim are ‘ “(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiffs] own performance under that contract, (3) the defendant’s nonperformance, and (4) damages.” ’ Childersburg Bancorporation, Inc. v. Peoples State Bank of Commerce, 962 So.2d 248, 253 (Ala.Civ.App.2006) (quoting Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995)).”
Mahoney v. Loma Alta Prop. Owners Ass’n, 4 So.3d 1130, 1133 (Ala.Civ.App.2008).
We find no evidence of a valid contract binding the County Commission or the Planning Commission to any agreement involving Burch or the Paynes. To the extent Burch agreed to create an earthen berm, he did not bind the County Commission or the Planning Commission to such an agreement. Additionally, any site plans submitted by Burch to the County Commission or the Planning Commission in which Burch agreed to build an earthen berm did not create a contractual duty on the part of the County Commission or the Planning Commission to the Paynes. As a result, we conclude that the Paynes failed to produce substantial evidence of all the essential elements of their breach-of-contract claim, and we therefore affirm the summary judgment entered on that claim by the trial court.

Conclusion

Because the County Commission and the Planning Commission owed no duty specifically to the Paynes, the Paynes could not maintain their tort claims. Additionally, because there is no evidence of a valid contract binding the County Commission or the Planning Commission to any agreement involving the Paynes, the Paynes could not maintain their breach-of-contract' claim. The trial court properly entered a *83 summary judgment in favor of the County Commission and the Planning Commission.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in part and concurs in the result.

. In their notice of appeal, the Paynes also named as an appellee “Shelby County Development Services.” Because Shelby County Development Services had not been a party before the trial court, that entity was stricken as an appellee.

. The record indicates that the written resolution may not have accurately captured the entire text of the conditional resolution. However, any omissions from the written resolution are not relevant to the dispute before this court ’ and, thus, we need not address them.

.According to the deposition testimony of Michelle O’Neal, an employee of the Department, the Department of Development Services is a department of Shelby County government "responsible for administering the subdivision and zoning regulations for the county” "[a]s well as inspections, building inspections and building permit approvals." The Department of Development Services an *75 swers to the Planning Commission. According to O’Neal, a “ ‘site plan’ contains the detailed engineering for the development of the site as well as the site layout of the buildings, maneuvering parking areas, and landscape plans.” O'Neal also stated that a “general site development plan” is “the general concept plan which shows the approximate location of buildings and maneuvering areas of parking spaces."

. According to O’Neal, tabling an action was a more drastic and more severe measure than merely continuing it. She explained that "[t]o continue a case does not require any additional action from the applicant. When the planning commission tables a case, they are tabling it waiting on additional plans from the applicant. It is tabled indefinitely until they meet those requirements.”

. The court in Rich stated:
"We readily acknowledge both the difficulty and the risk of error of any attempt to articulate the rule with that degree of definiteness which is easily applicable to varying factual situations. But this phenomenon is no stranger to the Rule of Law generally. We believe the wiser course is to allow the rule to evolve through the judicial process of trial and review on a case by case basis."
Rich, 410 So.2d at 387. Since Rich, this court has again acknowledged the difficulty in attempting to set forth a clear test regarding the general rule of municipal and county immunity. See City of Mobile v. Sullivan, 667 So.2d 122 (Ala.Civ.App. 1995). Despite this difficulty, the court in Sullivan recognized that
"[glenerally, a municipality is not liable for negligent or deficient electrical, plumbing, or other inspections, or for failure to provide adequate police protection. There is a long line of cases[, however,] holding counties and municipalities generally liable for failing to properly maintain or operate their sewer and drainage systems, streets, public ways, or buildings.”
Sullivan, 667 So.2d at 126-27 (citations omitted).

. The power to conditionally rezone has been expressly recognized as part of the legislative power to zone. See Johnson v. Doss, 500 So.2d 1129 (Ala.Civ.App. 1986).

. See, e.g., Chrismon v. Guilford County, 322 N.C. 611, 629, 370 S.E.2d 579, 590 (1988) (addressing conditional rezoning ordinances and stating: " ‘[t]hat which makes for the exclusive and preferential benefit of such particular landowner, with no relation to the community as a whole, is not a valid exercise of [the police power])’ " (quoting Mansfield & Swett, Inc. v. West Orange, 120 N.J.L. 145, 150, 198 A. 225, 233 (1938) (emphasis omitted)); Collard v. Incorporated Village of Flower Hill, 52 N.Y.2d 594, 421 N.E.2d 818, 439 N.Y.S.2d 326 (1981) (holding that conditions placed in a conditional rezoning ordinance must be in the public’s best interest).

. We note that the court in Sullivan expressly stated the following:
"It is important to note that the developing law in the area of municipal liability and substantive immunity, when applied to the unique facts in this case, dictates this outcome, and in our struggle to decide these cases on a case-by-case basis, we strictly narrow this holding to this case. Nothing in this opinion should be construed to indicate that this exact result would occur in a similar, but not identical, situation."
667 So.2d at 127-28.