Rel: March 31, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

————————————————

## SC-2022-0524

————————————————

## Ex parte City of Muscle Shoals

## PETITION FOR WRIT OF MANDAMUS

## (In re: Jennifer Cross et al.

## v.

## City of Muscle Shoals)

## (Colbert Circuit Court: CV-20-900062)

COOK, Justice.

Certain residents of the Nathan Estates subdivision ("the subdivision") in the City of Muscle Shoals ("the City") sued the City. They sought, among other things, an injunction directing the City to enact a comprehensive stormwater-management plan or to enforce its existing stormwater-management ordinances to prevent its retention pond located in the subdivision from overflowing and damaging the residents' property.[1] The City moved to dismiss the residents' claim for injunctive relief on the basis that it was entitled to substantive immunity, but the Colbert Circuit Court denied that motion. The City now petitions this Court for a writ of mandamus directing the circuit court to dismiss the

---

[1]The residents who filed the initial complaint were Reginna Burrell; William Burrell; Jennifer Cross; Jason Cross; Dana Fisher; Brady Gregory; Amber Gregory, individually and as next friend for Lainey Gregory, a minor; Brett King; Amanda King; Tammy Michael; Charles Michael; Dustin Parker; Carolyn Pate; Jamie Reed; Mary Rowe; Jimmie Rowe; Miller Terry; and Sonya Terry. On November 15, 2021, Amber Gregory, as next friend for Lainey Gregory, a minor, stipulated to the dismissal without prejudice of the claims asserted on Lainey Gregory's behalf. On November 16, 2021, the trial court dismissed those claims. On November 21, 2021, counsel for Reginna Burrell and William Burrell filed a motion to withdraw. The City states: "Upon information and belief, the Burrells are now proceeding pro se." Petition at 4 n.3. The Burrells are not named as plaintiffs in the second amended complaint that added the claim for injunctive relief or as respondents to the City's mandamus petition.

2

residents' claim for injunctive relief based on its entitlement to substantive immunity. In short, the City argues that claims for injunctive relief cannot be used as a means of directing a municipality to create new policies or ordinances or to control how it enforces its existing policies or ordinances. We grant the petition and issue the writ. However, in doing so, we do <u>not</u> reach the question of whether (or when) a municipality might be enjoined based on its own tortious conduct (as opposed to its conduct in enacting or enforcing its policies and ordinances).

<u>Facts and Procedural History</u>

In 2005, the City purchased a retention pond located in the subdivision ("the retention pond"). The residents alleged that, unlike most of the retention ponds in the City, the retention pond in the subdivision was not equipped with a pump or any other device to divert excess water but, instead, relied exclusively on evaporation and absorption to prevent flooding. As a result of that system, the residents further alleged, the retention pond would often overflow after heavy periods of rainfall, and, they asserted, the City was aware of this issue.

Shortly after purchasing the retention pond, the City solicited bids for the purpose of making some improvements to it. The City retained

3

the services of White, Lynn, Collins & Associates, Inc. ("the engineering firm"), to come up with the overall design for those improvements, and it later hired Jones Seaborn Colcock, Jr., and Parallax Building Systems, Inc. ("the contractors"), to make those improvements.

In 2011, the City enacted a stormwater-management ordinance that became the City's Drainage Manual ("the drainage manual"). See City of Muscle Shoals Code of Ordinances, Chapter 38, Article III, § 38-141 et seq. According to § 38-144 of the drainage manual, its goals and purposes were to "prevent flooding[] and erosion that may result from stormwater runoff from development and redevelopment projects" and "to protect existing natural stormwater resources, convey and control stormwater in a safe and responsible manner, and meet water quality goals." The drainage manual also included a disclaimer that "stormwater management, particularly in the area of stormwater quality management, is an evolving science" requiring periodic updates to ensure its goals and purposes are achieved.

In February 2019, the City experienced several days of heavy rainfall that resulted in water overflowing out of the retention pond and onto the property of the residents, damaging the real and personal

4

property of the residents and, in some cases, inflicting physical injury.

The residents sued the City on March 6, 2020, alleging claims of negligence and trespass to land and chattel.[2] The residents alleged that the City had failed "to properly construct, improve, and maintain" the retention pond.

In June 2020, the contractors filed a motion to intervene, accompanied by a complaint seeking a judgment declaring that they did not owe the City any defense or indemnity as to the residents' claims. The circuit court granted the contractors' motion to intervene.

On October 30, 2020, the residents filed their first amended complaint, alleging claims of negligence and trespass to land and chattel against the City, the engineering firm, and the contractors. The engineering firm and the contractors filed motions for a summary judgment, arguing that the residents' claims and a demand for indemnification asserted by the City were barred by the applicable statute of repose in § 6-5-221(a), Ala. Code 1975. The circuit court granted

---

[2]The residents also alleged a wantonness claim against the City; however, the City filed an unopposed motion for a judgment on the pleadings as to that claim, and that motion was granted.

the summary-judgment motions, leaving only the residents and the City as parties.

On November 24, 2021, the residents filed a second amended complaint against the City in which they added a claim for injunctive relief and sought attorney fees. Count III of the second amended complaint stated:

"COUNT III -- INJUNCTIVE RELIEF

"43. The foregoing Paragraphs of this Complaint are incorporated by reference as if fully set out herein.

"44. The [residents], on behalf of themselves and for the common benefit of other residents in Nathan Estates, the City of Muscle Shoals, and other residents and landowners in Colbert County, seek to compel the enaction of a comprehensive stormwater management plan, as required by the Drainage Manual, and/or to compel the compliance with the Drainage Manual in such a way as to prevent future flooding and subsequent damage.

"45. When [the residents] obtain such injunctive relief, they will render a public service and result in a benefit to the general public in addition to serving the interests of the [residents].

"46. As such, counsel for [the residents] are entitled to a common benefit attorneys' fee based on the lodestar method of calculation.

"47. Injunctive relief from this Court is the only manner by which the City may be compelled to enact such a plan.

6

"Wherefore premises considered, the [residents] demand judgment against the City for injunctive relief, common benefit attorneys' fees, costs, and all other damages for which the City is liable to the [residents]."

(Emphasis added.)

The City filed a motion to dismiss the claim for injunctive relief, to which the residents responded. After a hearing, the circuit court entered an order on March 17, 2022, denying the City's motion to dismiss that claim. The City then filed the present mandamus petition, and this Court subsequently ordered answers and briefs.[3]

Standard of Review

"'A writ of mandamus is a

"'"drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court."'

"Ex parte Wood, 852 So. 2d 705 (Ala. 2002) (quoting Ex parte United Serv. Stations, Inc., 628 So. 2d 501, 503 (Ala. 1993)).

---

[3]The City's alleged liability for negligence and trespass to land and chattel is not at issue in the present petition.

7

A petition for a writ of mandamus 'is an appropriate means for seeking review of an order denying a claim of immunity.' Ex parte Butts, 775 So. 2d 173, 176 (Ala. 2000). …

"In reviewing the denial of a motion to dismiss by means of a mandamus petition, we do not change our standard of review. Id. … Under Rule 12(b)(6), Ala. R. Civ. P., a motion to dismiss is proper when it is clear that the plaintiff cannot prove any set of circumstances upon which relief can be granted. Cook v. Lloyd Noland Found., Inc., 825 So. 2d 83, 89 (Ala. 2001). '"In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [she] may possibly prevail."' Id. (quoting Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993)). We construe all doubts regarding the sufficiency of the complaint in favor of the plaintiff. Butts, 775 So. 2d at 177."

Ex parte Haralson, 853 So. 2d 928, 931 (Ala. 2003) (footnote omitted).

## Analysis

The City first argues that it has a clear legal right to have the residents' claim for injunctive relief dismissed. Relying on Rich v. City of Mobile, 410 So. 2d 385 (Ala. 1982), the City contends that the circuit court erred when it denied the City's motion because, it argues, substantive immunity bars the residents' claim for injunctive relief. The residents argue that the City does not have a clear legal right to have their claim for injunctive relief dismissed. We agree with the City.

Generally, application of the rule of substantive immunity

8

"'prevent[s] the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.'"

Payne v. Shelby Cnty. Comm'n, 12 So. 3d 71, 78 (Ala. Civ. App. 2008) (quoting Rich, 410 So. 2d at 387). In Rich, a backup of a sewer line caused sewage to overflow into the plaintiffs' residence. They sued the City of Mobile, alleging "negligent failure to inspect or negligent inspection of the lines and the connection between Plaintiffs' residence and the main system." 410 So. 2d at 385. The City filed a motion to dismiss the plaintiffs' complaint and the trial court granted that motion.

On appeal, this Court affirmed the trial court's decision and stated that, to impose liability in the case overlooked "what [the Court] perceive[d] as overriding public policy reasons to hold to the contrary." Id. at 386. Specifically, the Court held:

"These policy considerations may be expressed in terms of the broader requirement of the City [of Mobile] to provide for the public health, safety, and general welfare of its citizenry. While, as here, the individual homeowner is affected by the discharge of the City sewer inspector's duty, the City's larger obligation to the whole of its resident population is paramount; and the imposition of liability upon the City, particularly where the Plaintiffs' reliance upon the

9

public inspection is secondary and inferential to their reliance upon the building contractor, necessarily threatens the benefits of such services to the public-at-large.

"A municipality, in contrast to the State, which has immunity under Ala. Const. 1901, § 14, is generally chargeable with the negligence of its employees acting within the line and scope of their employment. In Jackson v. City of Florence, 294 Ala. 592, 320 So. 2d 68 (1975), we interpreted § 11-47-190, [Ala.] Code 1975, as so mandating. We believe these public policy considerations, however, override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services."

410 So. 2d at 387 (emphasis added).

In announcing this rule of "substantive immunity," the Court did not restrict the application of the rule to sewer-line-inspection cases but held "that the substantive immunity rule of this case must be given operative effect only in the context of those public service activities of governmental entities … so laden with the public interest as to outweigh the incidental duty to individual citizens." Id. at 387-88.

The City maintains that the holding in Rich has been applied consistently by this Court to provide substantive immunity to municipalities when the conduct complained of involves the

10

municipality's enactment or enforcement of local laws relating to the delivery of public services. See, e.g., Hilliard v. City of Huntsville, 585 So. 2d 889 (Ala. 1991) (barring claims alleging negligent inspection of electrical wiring at an apartment complex); Nichols v. Town of Mount Vernon, 504 So. 2d 732 (Ala. 1987) (barring claims alleging negligent failure to provide adequate police protection); Garrett v. City of Mobile, 481 So. 2d 376 (Ala. 1985) (same); Calogrides v. City of Mobile, 475 So. 2d 560 (Ala. 1985) (same).

As to the residents' claim for injunctive relief, the City points to two cases in which our appellate courts have expressly held that substantive immunity bars a local entity's liability for claims alleging improper enactment, interpretation, or enforcement of local laws -- Payne v. Shelby County Commission, 12 So. 3d 71 (Ala. Civ. App. 2008), and Bill Salter Advertising, Inc. v. City of Atmore, 79 So. 3d 646 (Ala. Civ. App. 2010).

In Payne, landowners alleged that they had suffered damage as a result of the Shelby County Commission's and the Shelby County Planning Commission's alleged failure to enforce a conditional rezoning resolution. The trial court entered a judgment in favor of the county

11

defendants on the basis that they were entitled to substantive immunity. The Court of Civil Appeals applied the test formulated in <u>Rich</u> to decide "whether a county's exercise of its zoning power is a public-service activity so laden with the public interest as to outweigh any incidental duty that activity might create to an individual citizen." 12 So. 3d at 78. The Court of Civil Appeals affirmed the trial court's judgment, holding that "it cannot be disputed that zoning powers are a public-service activity and may not be exercised for the benefit of individual landowners to the exclusion of the interests and well-being of all citizens of a county or municipality." <u>Id.</u>

The Court of Civil Appeals also concluded that the acts taken by the county defendants to enforce the conditional rezoning resolution at issue in the case were protected by substantive immunity and that substantive immunity extended as well to a governmental entity's decision regarding how to enforce a local ordinance. Specifically, the Court of Civil Appeals explained:

> "A governmental entity's decision regarding how a zoning ordinance should be enforced is as much a legislative matter as is the enactment of a zoning ordinance. <u>See</u> § 11-52-76, Ala. Code 197[5] ('The legislative body of [the] municipality shall provide for the manner in which such [zoning] regulations and

12

restrictions and the boundaries of such districts shall be determined, established and <u>enforced</u> and from time to time amended, supplemented or changed.' (emphasis added)).

"Just as we have located no Alabama case holding that a governmental entity may be held liable in tort for its actions in adopting a zoning ordinance, we have located no Alabama case holding that a governmental entity may be held liable in tort for its failure to enforce local ordinances against third parties. <u>We have, however, found numerous cases refusing to impose liability against a governmental entity for its failure to enforce ordinances and statutes</u>. …

"....

"… <u>If a governmental entity's failure to investigate or to enforce its own ordinance does not give rise to a tort action, a governmental entity's decision among various enforcement options as to how best to enforce a zoning ordinance likewise does not give rise to a tort action</u>."

12 So. 3d at 80-81 (second and third emphases added).

In <u>Bill Salter Advertising</u>, the plaintiff sued the City of Atmore and one of its building officials after the defendants had decided that the city's sign ordinance prevented the plaintiff from rebuilding a sign destroyed by a hurricane. The Court of Civil Appeals found that the sign ordinance was not enacted to provide a benefit to the plaintiff, but "was enacted to benefit the municipality as a whole." 79 So. 3d at 652-53. Because the Court of Civil Appeals determined that the defendants did not owe an

13

individual duty to the plaintiff, the court affirmed the summary judgment in their favor on the basis that substantive immunity barred the plaintiff's claim for damages arising out of the defendants' interpretation and enforcement of the city's own sign ordinance.

In the present case, the operative complaint specifically asks the circuit court to enter an injunction requiring the City to enact particular policies or to enforce exiting policies to benefit the residents. It states: "The [residents] … seek to compel the <u>enaction</u> of a comprehensive stormwater management plan, as required by the Drainage Manual, and/or to <u>compel the compliance</u> with the Drainage Manual in such a way as to prevent future flooding and subsequent damage." (Emphasis added.) The "stormwater management plan" that the residents seek would, by its nature, be "comprehensive" and, thus, would apply to the entire City. The City correctly asserts that stormwater management is a public-service activity exercised for the collective benefit of all residents of the City, not just certain residents in the subdivision, and it refers to § 38-144 of the drainage manual, which states:

> "[T]he manual is intended to provide information to the general public on the city's stormwater policies and design practices, as well as assist developers, engineers, and city

staff in the preparation, review and approval of the stormwater report and construction drawings that must accompany private and public development proposals."

The City contends that the residents are asking the circuit court to compel the City to enact a plan or to enforce existing ordinances dealing with a drainage system and that this is exactly the kind of claim to which the protection offered by the substantive-immunity rule should apply.

Moreover, the City points out that, in Hilliard v. City of Huntsville, 585 So. 2d 889 (Ala. 1991), this Court upheld a trial court's determination that the City of Huntsville was entitled to substantive immunity regarding a claim alleging negligent electrical inspection because, the Court said, "the imposition of tort liability in this area would serve only to destroy the municipality's motivation or financial ability to support this important service." 585 So. 2d at 892. The City argues that to deny it substantive immunity puts the "public coffer" at risk to the detriment of all the City's citizens and that to allow a municipality to be sued every time an individual is aggrieved by a regulatory action or inaction would set a costly and undesirable precedent. Based on the foregoing, the City contends that the circuit court should have granted its motion to dismiss the residents' claim for injunctive relief.

15

In response, the residents contend that this Court has long held that when a municipality exercises its authority to construct or maintain a drainage system, "a duty of care exists, and a municipality may be liable for damages proximately caused by its negligence." Kennedy v. City of Montgomery, 423 So. 2d 187, 188 (Ala. 1982). See also Fricke v. City of Guntersville, 254 Ala. 370, 48 So. 2d 420 (1950); City of Birmingham v. Flowers, 224 Ala. 279, 140 So. 353 (1932). The residents further contend that the City's reliance on Rich and its progeny is misplaced and that this case is controlled by those cases holding that the "action of a municipality in constructing a drainage system is … attended by a duty to exercise due care to 'avoid injury to persons and property.'" Lee v. City of Anniston, 722 So. 2d 755, 757 (Ala. 1998) (quoting Sisco v. City of Huntsville, 220 Ala. 59, 60, 124 So. 95, 95 (1929)).

In support of their contention, the residents rely heavily on this Court's decision in Kennedy v. City of Montgomery, 423 So. 2d 187 (Ala. 1982). In Kennedy, a case in which this Court neither addressed substantive immunity nor cited Rich, individual homeowners sued the City of Montgomery, alleging that their homes had been subject to

16

flooding for several years and that the city had negligently failed to provide adequate drainage for their property.

However, the claims in <u>Kennedy</u> are different from those made here. In that case, the homeowners alleged that the conditions created by the City of Montgomery caused the flooding and constituted a nuisance. The homeowners sought monetary damages and an injunction prohibiting the city from causing further flooding. The trial court entered a summary judgment in favor of the city.

In reversing that summary judgment, this Court held:

"The city apparently rests on the contention that it had no legal duty and therefore could not be negligent. We have already held that the plaintiffs are entitled to a trial on the negligence and wantonness counts since they may be able to establish that the city violated a duty of care. Accordingly, the summary judgment must also be reversed on the issue of injunctive relief for abatement of the alleged nuisance.

"The city does not discuss in brief whether the conditions complained of constituted a nuisance, entitling the plaintiffs to compensatory damages. Rather, the city argues in reference to both nuisance and negligence, that the courts have no authority to review a policy decision concerning maintenance or improvement of the city's drainage system. This argument reflects a misunderstanding of the issues presented for decision. We hold only that the plaintiffs are entitled to a trial to prove the existence of a nuisance and of a

17

duty of care. Further exploration of the factual matters discussed above is necessary to determine if the city engaged in a nonreviewable policy decision or in culpable conduct, either negligent or wanton."

Kennedy, 423 So. 2d at 190.

In Kennedy, this Court recognized a distinction between a policy decision made by a city and culpable conduct engaged in by a city. We recognize that distinction here. Thus, the residents cannot rely on Kennedy to support their argument that they are entitled to an injunction mandating the City's enactment of a stormwater-management plan or its enforcement of the provisions of the drainage manual to benefit the residents.

The City's decisions about its enactment of a plan or its enforcement of existing ordinances concerning its drainage systems are public-policy decisions made in connection with the City's responsibility to provide for the public's safety, health, and general welfare and fall into the category of actions excepted from the general rule of liability. That exception -- the substantive-immunity rule -- is applied in "those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially

18

thwart the City's legitimate efforts to provide such public services." <u>Rich</u>, 410 So. 2d at 387. Thus, <u>Rich</u> and its progeny control in this case, and substantive immunity applies to bar the residents' claim for injunctive relief against the City.

The residents also argue that they are entitled to injunctive relief and that, therefore, mandamus relief is not appropriate here. The residents cite <u>City of Troy v. Watkins</u>, 201 Ala. 274, 275, 78 So. 50, 51 (1918), in which this Court stated that a citizen "may enjoin a municipality from taking or injuring his property," and <u>Triple J Cattle, Inc. v. Chambers</u>, 551 So. 2d 280, 282 (Ala. 1989), in which this Court stated that "[t]he primary reason for issuing an injunction is to prevent an irreparable injury, i.e., one not redressable with pecuniary damages in a court of law." We do not find either case to be applicable here.

In <u>City of Troy</u>, the plaintiff alleged that his property had been taken for public use without compensation, a circumstance not present in this case. In <u>Triple J Cattle</u>, the plaintiff sought an injunction against a private party, not a municipality, the case did not concern immunity, and the plaintiff alleged that, under the circumstances, it could demonstrate its entitlement to an injunction because, it asserted, it

would be irreparably injured if it were not granted such relief.

Finally, the residents argue that the City has adequate legal remedies if this Court denies its mandamus petition. In support of their contention, the residents rely on Ex parte State Farm Fire & Casualty Co., 320 So. 3d 550, 553 (Ala. 2020) (noting that, "even though a trial court may have erred in ruling on a motion to dismiss, that, by itself, is an insufficient basis for obtaining mandamus review"), and Ex parte Sanderson, 263 So. 3d 681, 688 (Ala. 2018) (noting that, "a writ of mandamus is not available merely to alleviate the inconvenience and expense of litigation for a defendant whose motion to dismiss ... has been denied"). Neither of those cases involved immunity and, instead, only stated the general rule developed by this Court regarding whether a writ of mandamus is an appropriate remedy for the erroneous denial of a motion to dismiss. This Court has carved out limited exceptions to that general rule, however, including when the motion to dismiss asserts the defense of immunity, stating that such a defense is "'of such a nature that a party simply ought not to be put to the expense and effort of litigation.'" Ex parte Hodge, 153 So. 3d 734, 748 (Ala. 2014) (quoting Ex parte Alamo Title Co., 128 So. 3d 700, 716 (Ala. 2013) (Murdock, J.,

20

concurring specially)). Thus, the residents' argument here is unpersuasive.

## Conclusion

Because the City was entitled to substantive immunity, the residents' claim for injunctive relief was due to be dismissed. We, therefore, grant the City's petition and direct the circuit court to dismiss Count III of the residents' second amended complaint.

PETITION GRANTED; WRIT ISSUED.

Parker, C.J., and Wise, Sellers, Stewart, and Mitchell, JJ., concur.

Shaw, J., concurs in the result, with opinion.

Bryan and Mendheim, JJ., concur in the result.

SHAW, Justice (concurring in the result).

I concur in the result. I write to note, as the main opinion indicates, that the decision in <u>Kennedy v. City of Montgomery</u>, 423 So. 2d 187 (Ala. 1982), does not address the substantive-immunity doctrine adopted by this Court in <u>Rich v. City of Mobile</u>, 410 So. 2d 385 (Ala. 1982). The distinction made in <u>Kennedy</u> between "a nonreviewable policy decision" made by a municipality and "culpable conduct" by a municipality (423 So. 2d at 190), as recognized in the main opinion, is not a distinction applicable in the context of substantive immunity, as other caselaw demonstrates.

Further, although injunctive relief, in some contexts, might not impose "liability" for purposes of substantive immunity, in this case the requested injunction would require the enaction of plans and, by necessity, public expenditures to effectuate those plans. Assuming, without deciding, that a circuit court has the power to require a municipality to legislate and execute public policy, in this case I see no functional distinction between the requested relief and the imposition of "liability."